## SHARP *v.* UNITED STATES.

ERROR TO THE UNITED STATES CIRCUIT COURT OF APPEALS FOR
THE THIRD CIRCUIT.

No. 208. Argued October 29, 30, 1903.—Decided November 30, 1903.

On condemnation proceedings it was not error, under the circumstances
of this case, to exclude evidence offered by the owner as to offers re-
ceived by him to purchase or lease the property. Evidence as to offers
for real estate is entirely different from evidence as to prices offered and
accepted or rejected for articles which are constantly dealt in and have
a known and ready sale in the markets and exchanges.

Where the government condemns part of a parcel of land the damage to
the remainder of that parcel arising from the probable use which the
government will make of the part taken is a proper subject of award, but
where the entire parcel is taken the owner cannot recover for prospective
damages, owing to such probable use, to separate and adjoining parcels
owned by him.

Where all the circumstances as to value, including prospective enhancement
if projected railroads and trolleys were built, are left to the jury, which
was also permitted to consider damages to adjoining parcels if by reason
of the parcel taken, they were made too small to work profitably, this
court will not reverse on the ground that the jury was not properly charged
as to questions of value.

Where on condemnation proceedings, under the practice in New Jersey, after
a trial in the District Court there is a new trial in the Circuit Court
with a jury, the trial is *de novo* and the only testimony to be considered
is that received on the second trial supplemented by the personal
view of the premises by the jury.

THE plaintiff in error has sued out this writ for the purpose
of reviewing a judgment of the United States Circuit Court of
Appeals for the Third Circuit, which affirmed a judgment of
the District Court of New Jersey, awarding damages to plain-
tiff in error for the taking of certain property of his on the
Delaware River, near Fort Mott, in that State. The award
of the jury was, in the opinion of the plaintiff in error, entirely
inadequate as just compensation to him as the owner of the
land for its taking by the government.

Pursuant to an act of Congress, approved August 18, 1890,
26 Stat. 315, making appropriations for fortifications and

other works of defence, and, also, under other acts of Congress and an enabling act of the State of New Jersey, the United States district attorney for that State commenced these condemnation proceedings. At the time of their commencement the plaintiff in error was the owner of three separate and independent, although adjoining, farms or tracts of land, known respectively as the "Dunham," the "Gibbons" and the "White" farms. It is the Gibbons farm which is taken by these proceedings.

Under the New Jersey practice in condemnation matters, the United States District Court for the District of New Jersey duly appointed three commissioners to appraise the value of the land in question, which they did, and made their report July 16, 1900, in which they reported that they had appraised the value of the 41.75 acres of land to be taken at the sum of $500 per acre, or a total sum of $20,875, and they fixed the damages sustained by reason of the taking of that land for the purposes stated, to the remaining tracts of land, at the sum of $12,953. An appeal from the award of the commissioners was duly taken in behalf of the United States to the United States Court for the District of New Jersey, and in accordance with the practice an issue was framed to be tried before the court and jury as a proceeding *de novo*. The issue as presented for trial was "Whether the sum of $500 per acre, in all, the sum of $20,875, is a just and equitable estimate or appraisement of the value of the said 41.75 acres of land required to be taken for the purposes aforesaid, and whether the damages sustained by reason of the taking of the said 41.75 acres, by the United States for the purposes aforesaid, to the remainder of the tracts of land from which the above-mentioned tract is taken, and its issues, and which the parties in interest will sustain by reason of the premises, amount to the sum of $12,953, and if not, what is a just and equitable estimate or appraisement of the value of same, and an assessment of damages to be paid by the said the United States of America, for such lands or minerals and damages aforesaid?"

It was also ordered that a jury should be struck and a view of the premises and property described in the report of the commissioners and in the petition should be had by the jury. This was done and a trial subsequently had. Testimony was taken upon the trial, and by consent of counsel it was agreed that the jury might bring in a verdict stating such a lump sum for the value of the lands and the damages to the adjacent property, as they thought was fairly proven from the testimony produced before them.

The jury found and assessed the value of the lands and the damages sustained at the sum of $12,000 to be paid the plaintiff in error by the United States. Judgment having been duly entered upon the award of the jury an appeal was taken to the Circuit Court of Appeals, where the judgment was affirmed, 112 Fed. Rep. 893, and the case is now before us on writ of error sued out by the owner of the land.

*Mr. David J. Pancoast* for plaintiff in error:

On the trial counsel offered, and had a right to prove that the taking of the land and its use for military purposes would directly injure the remaining land of the claimant. U. S. Const. Art. V, amendts.; and similar provisions in Const. of N. J.; Act of April 2, 1873, referred to in petition; Acts of Legislature of New Jersey, April 22, 1886, p. 268, § 4; April 21, 1887, p. 201, § 3; April 4, 1889, as amended by March 22, 1895, p. 452; March 17, 1891, p. 172, § 2; April 1, 1895, p. 769, § 1. All these acts give damages in addition to value of land taken. See also Cooley's Principles Const. Law, 372; 2 Lewis Eminent Domain, 462; *Currie* v. *R. R. Co.*, 23 Vroom, 392; *Walker* v. *Old Colony Ry. Co.*, 103 Massachusetts, 14; Ency. of Law, 2d ed. vol. II, p. 1171; *Lincoln* v. *Commonwealth*, 164 Massachusetts, 378; *City of Pasadena* v. *Stimson*, 91 California, 259; *Dodge* v. *Commissioners*, 3 Metcalf, 382; *Comstock* v. *Railway Co.*, 32 Atl. Rep. 431; *Shano* v. *Fifth Ave. Bridge*, 42 Atl. Rep. 128; *Laflin* v. *Chicago*, 43 Fed. Rep. 860; *R. R. Co.* v. *Ball*, 5 Ohio St. 576; *Matter of Utica &c. R. R.*, 56 Barbour, 464; *Newman* v.

*M. E. R. Co.*, 118 N. Y. 623; *Van Schoch* v. *D. & R. Canal*, Spencer, 249; *R. R. Co.* v. *Doughty*, 2 Zabriskie, 495, 501; *Western Pa. R. R. Co.* v. *Hill*, 56 Pa. St. 464; *Gilmore* v. *Pittsburg &c. R. R. Co.*, 104 Pa. St. 279; *Omaha &c. R. R. Co.* v. *Beeson*, 35 Nebraska, 365; *Oregon &c. R. R.* v. *Barlow*, 3 Oregon, 315; *Snyder* v. *W. U. Tel. Co.*, 25 Wisconsin, 68; *Little Rock &c. R. R. Co.* v. *Allen*, 41 Arkansas, 435.

Testimony as to offers received for the land should have been received. *Cliquot's Champagne*, 3 Wall. 141; *Whitney* v. *Thatcher*, 117 Massachusetts, 523; *Muller* v. *Railway Co.*, 83 California, 240; *Harrison* v. *Glover*, 72 N. Y. 455.

*Mr. Assistant Attorney General Purdy* for the United States:

Offers to purchase lands proved merely by the testimony of the owner are not competent and should not be received in evidence for the purpose of establishing the market value of such lands. *Fowler* v. *Commissioners*, 6 Allen, 96; *Wood* v. *Firemen's Ins. Co.*, 126 Massachusetts, 316; *Winnismet Co.* v. *Grueby*, 111 Massachusetts, 543; *Davis* v. *Charles River Branch R. Co.*, 11 Cush. 506; *Thompson* v. *Boston*, 148 Massachusetts, 387; *Anthony* v. *Railroad Co.*, 162 Massachusetts, 60; *Cochran* v. *Commonwealth*, 175 Massachusetts, 299; *Hine* v. *Manhattan Ry. Co.*, 132 N. Y. 477; *Keller* v. *Paine*, 34 Hun, 167; *Seale* v. *Metropolitan Ry.*, 15 Daly, 502; *Young* v. *Atwood*, 5 Hun, 234; *Parke* v. *Seattle*, 8 Washington, 78; *Santa Anna* v. *Harlin*, 99 California, 538, overruling *Muller* v. *Railway Co.*, cited by plaintiff in error; *Central Pacific R. R. Co.* v. *Pearson*, 35 California, 247; *Selma, etc., Railroad Co.* v. *Keith*, 53 Georgia, 178; Lewis on Eminent Domain, § 446; *Spring Valley W. Works* v. *Drinkhouse*, 92 California, 528; *St. Joseph and Denver City R. R. Co.* v. *Orr*, 8 Kansas, 419, 424; *Minn. &c. Co.* v. *Gluck*, 45 Minnesota, 463; *Louisville &c. R. R. Co.* v. *Ryn*, 64 Mississippi, 399. Cases on appellant's brief are inapplicable to this case; *Hunter* v. *Manhattan Ry. Co.*, 132 N. Y. 477, distinguishes *Harrison* v. *Glover*, cited by plaintiff in error.

The offer of plaintiff in error to prove the probable use that the government would make of the lands sought to be taken, and the further offer to prove that the use of the land for military purposes would injure and diminish the value of his adjoining farms was properly overruled.

The tract taken being a separate and independent holding, it would be improper to allow damages to the remaining and adjoining farms.

Assuming that the land sought to be taken by the government is to be devoted to a perfectly harmless use, without causing any inconvenience or annoyance to neighboring land owners, to entitle an owner to recover damages to the whole tract, when a part of his lands has been taken, there must have been a unity of contiguous parcels. The land must have been together. All of it must have been used as a single tract. 10 Am. & Eng. Ency. Law, p. 1166; *Keithsburg, etc., R. R. Co.* v. *Henry,* 79 Illinois, 290; *Hunter* v. *Wisconsin, etc., R. R. Co.,* 61 Iowa, 716; *Hartshorn* v. *Burlington, etc., R. R. Co.,* 52 Iowa, 613; *Kansas City R. R. Co.* v. *Merrill,* 25 Kansas, 421; *Cedar Rapids, etc., R. R. Co.* v. *Ryan,* 36 Minnesota, 546; *Peck* v. *Superior Short Line Ry. Co.,* 36 Minnesota, 343; *Wilmes* v. *Minneapolis, etc., R. R. Co.,* 29 Minnesota, 242; *Minnesota Valley R. R. Co.* v. *Doran,* 15 Minnesota, 230; *Wyandotte, etc., R. R. Co.* v. *Waldo,* 70 Missouri, 629; *Parks* v. *Wisconsin Central R. R. Co.,* 33 Wisconsin, 413; *Bigelow* v. *West Wisconsin R. R. Co.,* 27 Wisconsin, 478; *Lincoln* v. *Commonwealth,* 164 Massachusetts, 368, 379.

The rule for measuring damages in the State of New Jersey is that when the whole property is taken, it is its market value, and when a part only is taken, it is the difference in the value before and after such taking, to be ascertained by the use to which such untaken part can be put. *Henderson* v. *Orange,* 9 N. J. L. 71; *Butler Rubber Co.* v. *Newark,* 61 N. J. L. 32; *Currie* v. *Waverly, etc., R. Co.,* 52 N. J. L. 381.

The evidence as to the use by the government of the lands taken was too vague and speculative to be received. It was

not founded upon any clear, certain, or avowed obnoxious uses to which the property in question was to be put.

It has frequently been held in condemnation proceedings that the damages are to be assessed upon the basis that the work will be constructed and operated in a skillful and proper manner. *Jones* v. *Chicago, etc., R. R. Co.*, 68 Illinois, 380; *Jackson* v. *Portland*, 63 Maine, 65; *Fremont, etc., R. R. Co.* v. *Whalen*, 11 Nebraska, 585; *Seltzler* v. *Pennsylvania, etc., R. R. Co.*, 112 Pa. St. 56· *Neilson* v. *Chicago, M. & St. P. R. Co.*, 58 Wisconsin, 516; *Wichita & W. R. R. Co.* v. *Kuhn*, 38 Kansas, 104; *Leavenworth, etc., R. R. Co.* v. *Hurley*, 45 Kansas, 535; *Blakely* v. *Chicago, etc., R. R. Co.*, 25 Nebraska, 207; *Stewart* v. *Rutland*, 58 Vermont, 12; Lewis on Eminent Domain, vol. 2, ¶ 482, citing *Union Springs* v. *Jones*, 58 Alabama, 654; *North Vernon* v. *Voegler*, 103 Indiana, 314; *Miller* v. *Keokuk & Des Moines Ry. Co.*, 63 Iowa, 680; *Newgass* v. *St. Louis, etc., Ry. Co.*, 54 Arkansas, 140; *Alloway* v. *City of Nashville*, 88 Tennessee, 510; *McGregor* v. *Equitable Gas Co.*, 139 Pa. St. 230; *Denniston* v. *Philadelphia Co.*, 161 Pa. St. 41.

The specific acts of users of the lands complained of not being actionable at common law if done by a neighboring landowner, damages could not be predicated upon such acts in these proceedings instituted by the government. *Lincoln* v. *Commonwealth*, 164 Massachusetts, 368; *Titus* v. *Boston*, 161 Massachusetts, 209; *Bacon* v. *Boston*, 154 Massachusetts, 100, 102; *Caledonian Railway* v. *Ogilvy*, 2 Macq. 229, 235; *Ricket* v. *Metropolitan Railway*, L. R. 2 H. L. 175, 187; *Burwell* v. *Commissioners*, 93 N. C. 73; *Wehn* v. *Commissioners*, 5 Nebraska, 494; *Adams* v. *R. R. Co.*, 39 Minnesota, 286; *Cameron* v. *Chicago &c. R. R. Co.*, 42 Minnesota, 75.

Evidence of such acts of user by the government would not establish a taking of private property for public use within the meaning of the Constitution. *Kaje* v. *Chicago, etc., R. Co.*, 57 Minnesota, 422; *Beseman* v. *Pennsylvania R. R. Co.*, 50 N. J. L. 235, 242; *Decker* v. *Evansville, etc., Ry. Co.*, 133 Indiana, 493; *Dunsmore* v. *Central Iowa Ry. Co.*, 72 Iowa, 182; *Werges* v. *St.*

Louis, etc., Ry. Co., 35 La. Ann. 641; Baltimore & Potomac Ry. Co. v. Fifth Baptist Church, 108 U. S. 317, 331.

Although this court sustained an award for damages in United States v. Lynah, 188 U. S. 445, 472, it distinctly recognized in that case that there were many cases of injury resulting to adjacent property where no remedy exists against the United States. Transportation Co. v. Chicago, 99 U. S. 635; Pumpelly v. Green Bay Co., 13 Wall. 166; Eaton v. R. R. Co., 51 N. H. 504, 642; Chicago v. Taylor, 125 U. S. 161; Montana Co. v. St. Louis &c. Co., 152 U. S. 160; Gibson v. United States, 166 U. S. 269; Marchant v. Pennsylvania Railroad, 153 U. S. 380; Meyer v. Richmond, 172 U. S. 82; Mills v. United States, 46 Fed. Rep. 738; Baltimore & Potomac R. Co. v. Fifth Baptist Church, 105 U. S. 328.

The rule of damages in condemnation proceedings to adjacent and independent tracts of land is that where the government condemns a tract of land in its entirety, the owners of adjacent and independent tracts cannot be permitted to make proof of any damage or depreciation in value of their lands, no part of which is taken, either by reason of the taking or on account of the future uses to which the lands taken may be put by the government. If, however, in the future the government should devote the land to certain obnoxious uses, or to such a purpose as would result in the actual taking of the lands the landowner would have his remedy when such injury actually occurred.

The proceedings before the District Court was a trial de novo, upon which the findings and awards of the commissioners could not properly be considered by the jury in determining the amount of damages. The appeal supersedes the award of the commissioners. Metler v. E. & A. R. R. Co., 37 N. J. L. 223; Henderson v. Orange City, 9 N. J. L. 71; Browning v. Camden & Woodbury R. Co., 3 Gr. Ch. 47; Johnson v. Baltimore & N. Y. R. Co., 45 N. J. Eq. 454; Waite v. Port Reading R. Co., 48 N. J. Eq. 346; Ringle v. Freeholders, 56 N. J. L. 661; Coyner v. Boyd, 55 Indiana, 166; McKinsey v. Bowman, 58 Indiana, 88;

*Bohr* v. *Neuenschwander,* 120 Indiana, 449; *Covey* v. *Swagger,*
74 Indiana, 211; *Winklemans* v. *Des Moines, etc., Ry. Co.,* 62
Iowa, 11; *Seefeld* v. *Chicago Ry. Co.,* 67 Wisconsin, 96; *Chicago
Ry. Co.* v. *Broquit,* 47 Kansas, 571; *Daigneault* v. *Woonsocket,*
18 R. I. 378.

Mr. Justice Peckham, after making the foregoing state-
ment of facts, delivered the opinion of the court.

The questions to be reviewed by this court arise upon ex-
ceptions appearing in the record taken upon the decisions of
the court in relation to the admissibility of evidence, and also
to the charge of the court as to the proper items to be con-
sidered by the jury in arriving at their verdict.

The errors assigned and upon which the argument was had
in the Circuit Court of Appeals were twelve in number. They
are in substance the same here. The first seven refer to the
rejection of evidence in regard to offers to purchase the lands
from the plaintiff in error. It was held by the trial court, in
response to the proposal to give such evidence, that the plain-
tiff in error could not testify to different offers he had received
to purchase the property for hotel, residential or amusement
purposes, or for a ferry, or a railroad terminal, or to lease the
property for hotel purposes.

Upon principle, we think the trial court was right in reject-
ing the evidence. It is, at most, a species of indirect evidence
of the opinion of the person making such offer as to the value
of the land. He may have so slight a knowledge on the sub-
ject as to render his opinion of no value, and inadmissible for
that reason. He may have wanted the land for some particu-
lar purpose disconnected from its value. Pure speculation may
have induced it, a willingness to take chances that some new
use of the land might in the end prove profitable. There is
no opportunity to cross-examine the person making the offer,
to show these various facts. Again, it is of a nature entirely
too uncertain, shadowy and speculative to form any solid

foundation for determining the value of the land which is sought to be taken in condemnation proceedings. If the offer were admissible, not only is it almost impossible to prove (if it exist) the lack of good faith in the person making the offer, but the circumstances of the parties at the time the offer was made as bearing upon the value of such offer may be very difficult, if not almost impossible, to show. To be of the slightest value as evidence in any court, an offer must, of course, be an honest offer, made by an individual capable of forming a fair and intelligent judgment, really desirous of purchasing, entirely able to do so, and to give the amount of money mentioned in the offer, for otherwise the offer would be but a vain thing. Whether the owner himself, while declining the offer, really believed in the good faith of the party making it and in his ability and desire to pay the amount offered, if such offer should be accepted, or whether the offer was regarded as a mere idle remark, not intended for acceptance, would also be material upon the question of the *bona fides* of the refusal. Oral and not binding offers are so easily made and refused in a mere passing conversation, and under circumstances involving no responsibility on either side, as to cast no light upon the question of value. It is frequently very difficult to show precisely the situation under which these offers were made. In our judgment they do not tend to show value, and they are unsatisfactory, easy of fabrication and even dangerous in their character as evidence upon this subject. Especially is this the case when the offers are proved only by the party to whom they are alleged to have been made, and not by the party making them. There is no chance to cross-examine as to the circumstances of the party making the offer in regard to good faith, etc. Evidence of this character is entirely different from evidence as to the price offered and accepted or rejected for articles which have a known and ready sale in the market. The price at the stock exchange of shares of stock in corporations which are there offered for sale or dealt in is some evidence of the value of such shares. So

evidence of prices current among dealers in those commodities which are the subject of frequent sales by them would also be proper to show value. This evidence is unlike that of offers to purchase real estate, and affords no ground for the admissibility of the latter.

A reference to the authorities shows them to be almost unanimous against receiving evidence of this kind. Counsel have cited many cases on this subject and they are contained in the margin.[1] Most of them are clearly against the admissibility of the evidence, while some, which at first sight might be regarded as exceptional, will be found upon closer examination to recognize the general rule as already stated.

The next four assignments of error relate to the proper items of damage to be included in the award.

The owner offered to prove the probable use the government would make of the land for military purposes for which it was taken; also, that the use of the land for such military purposes would damage and depreciate the remaining and adjoining land; also, that if the land to be taken was used by the government for military purposes it would endanger the adjoining land of the owner for a long distance and make the removal of his buildings necessary. These offers were rejected, and the court held that the jury should not take into account prospective damages to the remaining and adjoining land of the owner arising from the future use of the land sought to be

---

[1] *Fowler* v. *County Commissioners*, 6 Allen, 92, 96; *Wood* v. *Firemen's Fire Insurance Co.*, 126 Mass. 316, 319; *Thompson* v. *Boston*, 148 Mass. 387; *Anthony* v. *Railroad Company*, 162 Mass. 60; *Cochrane* v. *Commonwealth*, 175 Mass. 299; *Hine* v. *Manhattan Railway Company*, 132 N. Y. 477; *Keller* v. *Paine*, 34 Hun, 167; *Lawrence* v. *Metropolitan Elevated Railway*, 15 Daly, 502; *Young* v. *Atwood*, 5 Hun, 234; *Parke* v. *City of Seattle*, 8 Wash. 78; *Santa Ana* v. *Harlin*, 99 Cal. 538; *St. Joseph & Denver City R. R.* v. *Orr*, 8 Kansas, 419, 424; *Minnesota &c. Railway* v. *Gluek*, 45 Minn. 463; *Louisville &c. R. R.* v. *Ryan*, 64 Miss. 399.

As distinguished from the general rule, see *Whitney* v. *Thacher*, 117 Mass. 523; *Cliquot's Champagne*, 3 Wall. 114, 141; *Chaffee* v. *United States*, 18 Wall. 516, 542, explaining *Cliquot's Champagne*; *Muller* v. *Railway Company*, 83 Cal. 240; overruled by *Santa Ana* v. *Harlin*, 99 Cal. 538; *Harrison* v. *Glover*, 72 N. Y. 451.

taken from him for military purposes, although at the same time the court charged, if the evidence showed that by reason of the severance of the farms those which remained were made so small that it would be unprofitable to work them, whatever damage resulted therefrom should be given the owner.

The question in this case arises in a somewhat peculiar way. Under the procedure provided for in the statute of New Jersey upon appeal to the court from the award made by the commissioners there is to be a new trial of the question as to the amount of damages to which the land owner shall be entitled, and that trial is to be had before a jury under the direction of the judge. For this purpose an issue is to be prepared by the judge in the presence of counsel for trial before the jury. Pursuant to that practice the court did present to the jury an issue for it to decide, which is set forth in the foregoing statement of facts. Counsel for the owner, therefore, contend that, under that issue, the court should have received all evidence offered by the land owner tending to show the damages sustained by him not only by the taking of the land in question, but also damages to the remaining tracts of land by reason of the use which the government would probably make of the land taken.

We are of opinion that the court was not bound to receive evidence upon any subject which it held to be not a proper item to make up the award to the owner. Evidence of some damage to the remaining farms was permitted, as already seen, which might arise by reason of those farms being made so small that they might not be profitably worked, but what particular items of damage were proper to be considered in relation to the remaining tracts were questions primarily for the trial judge, subject to review in due course of procedure.

The important question is as to the admissibility of evidence of damages to the remaining lands of the owner which would probably flow from any particular and probable use by the government of the land to be taken. It is said by the plaintiff in error that just compensation consists not only in an award of the value of the lands which are taken, but also of

any damage that may result to the portion of the tract which remains, on account of such taking and on account of the uses to which the land taken may, or probably, will be put, and he cites many cases to show the correctness of the rule which he asserts.

Its correctness may be conceded, but what we have to decide is whether the facts in this case bring it within the rule itself. We must see, therefore, what those facts are in order to intelligently determine the applicability of the rule asserted by the plaintiff in error.

It appears that long before the commencement of these proceedings there was a government reservation at this point on the Delaware River, upon which Fort Mott had been erected. This reservation had a frontage on that river, and ran back quite a number of feet, in some places nearly two thousand. Permanent fortifications had already been erected, and placements for heavy ordnance already built on this reservation, together with magazines and other appurtenances for the firing of large guns. The particular tract to be taken, namely, all of the Gibbons farm of 41.75 acres, lies on parts of three sides of the government reservation, and a portion of it fronts on the Delaware River, the same as the reservation itself. It was purchased in 1891 for $6000. The Dunham farm, of eighty acres, was purchased in 1880 for $5800, by the wife of, and subsequently conveyed by her to, the plaintiff in error; the White farm, also of eighty acres, was purchased in 1899, a little over a month before the commencement of these proceedings for $5200. These three tracts of adjoining land, one of which only was taken, thus appear to have come to the present owner by three separate titles at three distinct times, running over a period of about twenty years. The evidence returned in the bill of exceptions, which does not purport to contain all the evidence given on the trial, does not show very clearly the exact condition of these various tracts at the time of their purchase by the plaintiff in error, but the judge, in his charge to the jury, evidently referred to evidence on this subject

which does not appear in the bill, and was not corrected by counsel, and no exception was taken to the statement. We may, therefore, properly regard his references to the testimony actually given, but part of which does not appear, as correct recitals of the same. The judge stated that the Dunham farm, which adjoins the one taken, has eighty acres in it and 600 feet front on the river. The farm had on it a dwelling house and barns and such buildings as ordinarily and, perhaps, necessarily go with a farm of that size and character in that neighborhood. The land that was purchased in 1891 (the farm to be taken) then had a dwelling house, a barn, a carriage house and such outbuildings as ordinarily go with a farm of that size and character. Then the White farm consisted of eighty acres, and had a farm house on it and buildings but no water front, and one had to go through a lane of some kind to get to it. The testimony was, as stated in the judge's charge, that these farms, including the White farm up to 1899, when it was purchased by the plaintiff in error, were always worked separately, each having its separate dwelling house and outbuildings. It must be assumed that the statements of the court were correct statements of the testimony. If not, the bill of exceptions should have shown it, and some question made at the time in regard to the erroneous character of the charge upon the facts. Error must appear in the record and cannot be presumed.

The map contained in the record shows a highway between these tracts. From all the evidence which can be gathered from the record it plainly appears to us that these tracts of land were absolutely separate and independent farms, having no necessary relation with each other, and the farming on each had been conducted separately, and each farm had its own house and outbuildings. It is these facts which form the foundation of the charge of the court to the jury.

We are, therefore, not only permitted but bound to regard the evidence in the record as supplemented by the statement of the evidence by the court.

Upon the facts which we have detailed, we think the plain-

tiff in error was not entitled to recover damages to the land not taken because of the probable use to which the government would put the land it proposed to take. If the remaining land had been part of the same tract which the government seeks to condemn, then the damage to the remaining portion of the tract taken, arising from the probable use thereof by the government, would be a proper subject of award in these condemnation proceedings. But the government takes the whole of one tract. If the evidence were such as to leave it a matter of some doubt whether the land owned by the plaintiff in error were one tract or separated into three separate and distinct tracts, it would be proper to leave that question to the jury, with the instruction that if they found that it was one tract, then damages might be awarded, and refused if they were separate and independent tracts. Upon this subject it was well stated by Judge Gray, delivering the opinion of the Circuit Court of Appeals, as follows:

"Depreciation in the value of the residue of such a tract may properly be considered as allowable damages in adjusting the compensation to be given to the owner for the land taken. It is often difficult, when part of a tract is taken, to determine what is a distinct and independent tract; but the character of the holding, and the distinction between the residue of a tract whose integrity is destroyed by the taking and what are merely other parcels or holdings of the same owner, must be kept in mind in the practical application of the requirement to render just compensation for property taken for public uses. How it is applied must largely depend upon the facts of the particular case and the sound discretion of the court. All the testimony in this case tends to show the separateness of this tract which was the subject of the condemnation proceedings. It had never been farmed or used in connection with either of the other farms owned by the plaintiff in error. It was in no way reasonably or substantially necessary to the enjoyment of the other two tracts. Separated from it by a public road, the 'White' farm, so called, had only been purchased by plaintiff

in error ten days before the proceedings for condemnation were begun. The authorities cited by the defendant in error fully support their contention in this respect. In *Currie* v. *Waverly &c. R. R. Co.*, 23 Vroom, 392, cited by counsel for plaintiff in error for the proposition that, where a part of a tract is taken for condemnation damages to the remaining land shall be given, the court also says: 'It is an established rule in law, in proceedings for condemnation of land, that the just compensation which the land owner is entitled to receive for his lands and damages thereto must be limited to the tract a portion of which is actually taken. The propriety of this rule is quite apparent. It is solely by virtue of his ownership of the tract invaded that the owner is entitled to incidental damages. His ownership of other lands is without legal significance.' It is enough to say that, in our opinion, the two other farms or tracts of land owned by plaintiff in error constituted such separate and independent parcels as regards the land in question that they cannot properly be spoken of as the residue of a tract of land from which the land in question was taken."

If A own a single house in a block in a city and the government proposes to take it, is it liable to the owner of the house adjoining for a depreciation in its value by reason of the taking of the house of A for the purposes proposed? In other words, would the government be liable to the owner of land not taken for damages which were incidental because of the use intended by the government of the property it took? In such case no property of the owner of the other land is taken, and although very great damage might be inflicted upon him by the use of the property taken, has he a constitutional right of recompense? It would be within the discretion of Congress to provide that this damage should be paid to the owner of the land not taken, yet still in proceedings to condemn a property for public use on payment of "just compensation," under the Constitution, we cannot think (in the absence of Congressional action to that effect) that the government would be liable for consequential damages sustained by a party, no portion of

whose property was taken. Although the present is not exactly such a case, yet the illustration serves to somewhat bring out the principle under review.

If again, the government seek to take the property of A, consisting of a single house in a city, and he has also acquired, through a separate title and at a different time, houses adjoining, would the government be liable to A for the damage sustained by that other property on account of the use the government proposes to make of the property taken? Or again, if A purchase a block of vacant lots in a city from one source and at one time and erect a row of buildings thereon, and one building the government seeks to take, would the government be liable for the damages sustained by the other houses by reason of the uses to which it would put the building taken? These are questions involving different facts which may possibly show the various difficulties inhering in the subject under some circumstances. See *Lincoln* v. *Commonwealth*, 164 Massachusetts, 368, and *Wellington* v. *Boston & Maine Railroad*, 164 Massachusetts, 380; but in the case before us those difficulties do not, in our judgment, exist. There are here separate and distinct farms conducted under the circumstances detailed, and we cannot see that the owner of those separate farms not taken established any right of payment for damages to them arising from the use which the government intended to make of the land it took.

Although denying the right to recover certain alleged damages to the land remaining, the court was not illiberal in the rules it adopted for ascertaining the compensation due for the taking of the land. It permitted the jury to consider not only the purposes to which the land taken had been put, but also, as bearing upon its value, the jury was directed to consider evidence as to the adaptability of the land for other than merely agricultural purposes; that while no merely speculative value was to be placed on the land, this possible adaptability was to be considered, and if in the judgment of the jury it was probable that the improvements which had been spoken of in

the testimony would within some reasonable time be made, that was an element which might enter into their calculation in forming their estimate of the value of the land.

Therefore the jury was permitted to take into consideration the future possible building of a railroad in the neighborhood which would pass within a mile or so of Fort Mott, although no steps had yet been taken to build it; still as there had been some talk of building it, and the railroad might thereafter be built, the jury were instructed that if they thought from the evidence it would be built within a reasonable time, and that if built it would enhance the value of the property, they might take that fact into consideration as giving the then present actual value beyond that of an ordinary farm.

The same instructions were given in relation to a trolley road which it was supposed might be built to run near this land.

The jury was also permitted to consider the adaptability of the land for a hotel or cottage sites, and in addition, as already stated, the court charged that if the evidence showed that by reason of the severance of these farms they were made so small that it would be unprofitable to work them, the jury ought to give the damages arising therefrom.

The last assignment of error arose from the charge of the judge that the jury must be satisfied as to the value and damage by the testimony that was produced before it, without reference to any testimony that was produced before the commissioners, or influenced by the commissioners' report. This instruction we think was clearly correct. The case was tried *de novo* upon the appeal before the court and a jury, and the only testimony to be considered was that which was received on that trial, supplemented by the knowledge obtained by the jury from a personal view of the premises.

Upon a consideration of the whole record, we think, there was no error committed upon the trial of the case before the jury, and the judgment of the Circuit Court of Appeals for the Third Circuit, affirming the judgment of the District Court for the District of New Jersey, is, therefore, ↻

*Affirmed.*