**UNITED STATES v. 11 ACRES OF LAND, MORE OR LESS, SITUATE IN VILLAGE OF HICKSVILLE, TOWN OF OYSTER BAY, NASSAU COUNTY, N. Y., et al.**

No. 69.

District Court, E. D. New York.

July 20, 1945.

374

Harry T. Dolan, Sp. Asst. to the Atty. Gen. (Thomas J. Gallagher, Sp. Atty., of Brooklyn, N. Y., of counsel), for petitioner-plaintiff.

Paul Kelly, of Freeport, N.Y., and Charles V. McDonald, of New York City, for claimant Alexander Verity.

BYERS, District Judge.

The Court is called upon to determine the measure of fair compensation to be paid to the claimant in this proceeding for the taking of his property by the Government in Condemnation.

Having heard and considered the testimony, and visited the property, I do now make and state the following:

### Findings

1. The damage parcel is part of a tract of farmland containing 20.7478 acres, situate at the corner formed by the easterly side of Bloomingdale Road, also known as New South Road, and the northerly side of Mulberry Street, Hicksville, Nassau County, State of New York, and within the Eastern District of New York, and more particularly shown on the Damage Map, Government Exhibit 1.

2. The parcel taken comprises 11.0126 acres, and consists of the northerly part of the said tract, and is bounded and described as follows:

"Beginning at a point on the easterly line of Bloomingdale Road, sometimes called New South Road, distant 375.28 feet northerly from the intersection of the northerly line of Mulberry Street and the easterly line of Bloomingdale Road, said point of beginning being a monument located at the southwesterly corner of the property intended to be described herein; thence running North 5° 00′ East and along the easterly line of Bloomingdale Road a distance of 500.00 feet to land now or formerly of Peter Gilweiler; thence South 81° 10′ 30″ East and along the southerly line of land now or formerly of Peter Gilweiler 837.48 feet to the southwesterly line of land of the Long Island Railroad; thence South 38° 36′ East and along the southwesterly line of land of the Long Island Railroad 426.88 feet to land of McGunninge or Vogel; thence South 5° 00′ West and along land of McGunninge or Vogel 135.00 feet to a monument; thence North 85° 00′ West 1130.00 feet to the monument on the easterly line of Bloomingdale Road at the point or place of beginning.

"Containing within said bounds 11.0126 acres of land, more or less".

3. Judgment was entered in this court on November 9, 1944, confirming the vesting of title to said land in the United States of America on November 8, 1944, pursuant to Declaration of Taking filed on that day.

4. An order had been made and entered on September 26, 1944, granting to the petitioner the immediate use and occupancy of the premises pursuant to Petition in Condemnation.

5. The property so taken was farmland, in use for agricultural purposes on the date of said last mentioned order.

6. The best available use of the said land at that time was for agricultural purposes.

7. The fair and reasonable value of the said 11.0126 acres on September 26, 1944, was $900.00 per acre, or $9911.70.

8. The claimant in this proceeding did not sustain any consequential or severance damage in addition to the sum last above stated, by reason of the taking of the said 11.0126 acres from the original tract consisting of 20.7478 acres.

The foregoing require but little comment or explanation. The property taken is part of a farm applied to dairy uses, for which the annual rental at the time of taking was $900.00.

The proximity of the farm to the plant of the Grumman Air Craft Corporation imparted to it, as to all other holdings in the vicinity, an element of potential value for possible requisition in connection with the air craft industry, which depended upon the course of the War, and the extent to which the necessities arising therefrom might involve plant extension. That condition was present in September of 1944, and explains some of the sales of property upon which the experts on both sides based their opinions.

Mr. Edwards, testifying for the claimant, gave it as his opinion that a price of $1400.00 per acre was the proper basis of valuation, whether the property be deemed best

fitted for industrial or residential purposes, i. e., development.

Messrs. Strauss and Browne, for the Government, were respectively of the view that $700.00 and $723.00 per acre represented the correct value.

All but one of the sales considered by all witnesses were at $750.00 per acre or less, and that one was the McGunnigle sale to Grumman, in November of 1943, of 55 acres at $1250.00 per acre.

I do not believe that transaction can be accepted as establishing a standard acreage price for the ensuing two years, for all property in the vicinity, even though it is close in point of time and contiguity; nor is it possible to dismiss it entirely because it is not strictly a comparable transaction as to extent of acreage or physical characteristics of the property; the concrete highway running through the McGunnigle property rendered that acreage peculiarly desirable, since transit through it, by the large number of employees using motor cars to and from the Grumman plant, must have been an important element in the acquisition of so large a factory property.

Another apparent but not actual exception is the Pflegler sale to Di Gaitano, in September of 1943, of a 10 acre farm including buildings at $9500.00, since the valuation of the structures thereon erected is not shown.

■ The elusive element, in the effort to assign to farmland an added factor of value because of the near presence of an airplane plant and its possible requirements for expansion, resides in the reflection that if the need for planes for the purposes of war should come to an end, as surely it must, the potential value would disappear with that happening, and no other industrial use was observable, in September of 1944, as likely to affect the demand for this property; which means that the hidden factor, as of that time, was necessarily of limited duration, so far as the then visible future was concerned. In the effort to add to what may be termed the stable value of this land which I believe to have been $700.-00 per acre, an additional reasonable element of transitory value ascribable to the conditions that have been indicated, I have concluded that $900.00 per acre would fairly and reasonably compensate this claimant for the 11.0126 acres taken in this proceeding.

■ Mr. Edwards was also of the opinion that an award should be made for consequential or severance damage, since he thought that the value of the remaining portion of the property, not taken, was adversely affected by the loss of the original frontage on the railroad right of way included in the portion taken, there being no such frontage in the remaining 9.7352 acres, which contain the residence, barn, etc.

I do not consider that severance damage has been demonstrated.

It is of course conceivable that the 9.7352 acres remaining to the claimant of his original tract might be offered as a factory site and rejected because there is no frontage on the right of way of the Long Island Railroad, but in view of all conditions known and established on September 26, 1944, that suggestion may be ascribed to hope rather than expectation; to the seductive reveries inspired by the character of the witnesses' calling, rather than to any tangible foundation exposed in the evidence.

There is equally no justification for awarding such special damage by reason of a possible diminution in the claimant's reduced holding, for there is no showing in the evidence that the remaining acreage was of less unit value after the taking than before, because of the taking. There is testimony that 10 acre farms are in demand, and that is practically what the claimant now owns. There is a suggestion that it is less desirable as a farm because of the presence now of a manufacturing plant on the 11.0126 acres which have been taken, but that is the opinion of a real estate expert, not of a farmer. No one engaged in that essential calling testified as a witness, on that or any other subject.

The conclusion that so-called severance damages have not been established is based upon a consideration of what was written in Sharp v. United States, 191 U.S. 341, 24 S.Ct. 114, 48 L. Ed. 211; United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L. Ed. 336, 147 A.L.R. 55; and Baetjer v. United States, 1 Cir., 143 F.2d 391.

Settle order in accordance herewith.