**MURDOCK et al. v. UNITED STATES.**
**No. 13407.**

Circuit Court of Appeals, Eighth Circuit.
April 3, 1947.

J. R. Wilson, of El Dorado, Ark. (John A. Sherrill, of Little Rock, Ark., on the brief), for appellants.

Alvin O. West, Atty., Department of Justice, of Washington, D. C., and John E. Harris, Sp. Asst. to Atty. Gen. (David L. Bazelon, Asst. Atty. Gen., R. S. Wilson, U. S. Atty., of Van Buren, Ark., and Roger P. Marquis, Atty., Department of Justice, of Washington, D. C., on the brief), for appellee.

Before GARDNER, THOMAS, and RIDDICK, Circuit Judges.

THOMAS, Circuit Judge.

On October 6, 1944, the United States commenced this condemnation proceeding to acquire title to 68,000 acres of land in Calhoun and Ouachita counties, Arkansas, for the site of a Naval Ordnance plant. An order granting immediate possession of the entire tract was filed on December 6, 1944, and judgment vesting title in the United States was entered thereon.

On June 4, 1945, C. E. Murdock and the other individual appellants intervened in the proceeding claiming to be the owners of mineral rights in a part of the lands of the alleged value of $15 an acre and praying that the issues be submitted to a jury. And on June 27, 1945, The Southern Company filed an interpleader claiming to be the owner of the mineral in a part of the land condemned and of many acres of land in Calhoun and other counties of Arkansas situated outside of the condemned tract, all being of the value of $15 an acre, and praying that the issue of just compensation be submitted to a jury.

The United States filed responses to the claims of the interveners and interpleader admitting ownership of the parties to the minerals in certain described parts of the lands in question and denying that "said minerals are of the value of $15 per acre or of any other sum whatever."

The case was tried to a jury and verdicts were returned fixing the value of the minerals as of the date of taking on October 6, 1944, at $1 per acre. A motion for a new trial was overruled, and judgments were entered on the verdicts aggregating $20,155.13. After this appeal had been taken an amendment to the motion for a new trial was filed and overruled.

The evidence disclosed that no minerals had ever been developed on any of the subject lands. Oil and gas were thought to exist in the area because of the existence of oil fields which had been found and developed several miles distant from the Ordnance tract, the nearest well in which a trace of oil had been found being about 12 miles away. However, there had been considerable traffic in the sale and lease of mineral rights in parts of the tract and the adjacent land for several years. Both parties introduced the expert testimony of geologists and of lay witnesses bearing upon the market value of the prospective mineral rights. The government's witnesses testified that such rights had no value and the interveners' and the interpleader's witnesses testified, on the other hand, that the market value of such rights ranged from $5 to $15 an acre. Appellant Murdock placed the value at $25 an acre.

No exceptions were taken to the instructions to the jury. It is not contended that the conflicting evidence does not support the verdict. The contention is that the verdict is inadequate as a result of prejudicial errors occurring in the proceedings and on the trial. The alleged errors are summarized by appellants under five contentions:

1. That the court erred in excluding testimony concerning income from the mineral estate in the form of bonuses and rentals derived from leases;

2. That the court erred in excluding testimony concerning the proximity to the land of dry-holes drilled in search of oil;

3. That the court erred in admitting evidence relating to the assessed value of the minerals for tax purposes;

4. That the court erred in admitting evidence of low or no value of mineral rights on lands too remote from the land in controversy; and

5. That the court erred in denying a new trial for alleged newly discovered evidence.

The consideration of these contentions is rendered difficult by the total failure of appellants to observe the requirements of our rule 11(b) Fourth requiring that a brief contain a separate statement of each point relied upon and intended to be urged with the record page; and "If an error assigned or point relied upon relates to the admission or exclusion of evidence, the statement shall quote the evidence referred to and the pertinent objections or exceptions taken, together with the rulings of the court thereon, giving the pages of the printed record on which the quotations appear."

We are informed in appellants' printed brief that the contention in regard to the exclusion of evidence concerning bonuses and rentals received from the mineral estate has its basis in the ruling on a motion to strike paragraph 2 of the interpleader of The Southern Company. The Company alleged that it was the owner of mineral interests in 129,634 acres of land in Calhoun County, Arkansas, amounting to 67,489 full mineral acres; and that:

"II. In the period between August 2, 1926, and March 21, 1945, The Southern Company and its predecessors in title have made sales of mineral leases upon said lands in the amount of $74,448.46; that it has received rentals upon said lands in the total amount of $17,926.10, or a total return from its mineral interest of $92,407.56, or an average of approximately $5,000.00 per year. The Southern Company owns in Calhoun and adjoining counties in the vicinity of these lands a total of 101,000 full mineral acres for which it has received during the above mentioned period approximately one-fourth of a million dollars for mineral leases and rentals.

"The large amount of lands held by The Southern Company in block, as are these lands, have an added value for rentals and leases over and above lands held in small blocks and in different ownerships."

The record sets out a motion of the government filed October 29, 1945, to strike the foregoing allegations on the grounds that it is an attempt to plead (1) "income from said mineral interest as a basis for the determination of value and (2) includes lands in addition to the lands in the area." The original record shows no ruling on this motion but in an Appendix to appellee's brief an omitted part of the record certified by the Clerk of the District Court shows that the motion was presented to the court on the day it was filed and that "The Southern Company, through its said attorney, concedes the government's motion to strike, and the Court sustains the motion and orders stricken all of paragraph 2 of answer of The Southern Company as to said tracts."

In their reply brief appellants say: "The 'concession' referred to in the Order was of the Appellee's right as a matter of course to the granting of its motion to strike portion of the Intervention *in view of the Court's prior ruling on the question.* Counsel did not abandon the point, and continued to object and save exceptions whenever the type of evidence cropped out in the testimony."

No "prior ruling" of the court on the question is called to our attention, and we are unable to find any such prior ruling in the record. The ruling was entered on October 29, 1945, and the judgment entry states that the trial came on for hearing on the same day.

■■■ We think the court did not abuse its discretion in excluding evidence of mineral leases. Evidence of sales of mineral rights was admitted. The "concession" by counsel in consenting to the order to strike the allegations of The Southern Company's pleading relating to bonuses and rentals warranted the court in rejecting such evidence. Oscanyan v. Arms Co., 103 U.S. 261, 263, 26 L.Ed. 539; Wiget v. Becker, 8 Cir., 84 F.2d 706, 709. Further, the pleading referred to lands not included in the tract involved in the proceeding. Again, a mineral lease on unproved oil lands is purely speculative. It is not comparable to an ordinary lease for the use of real property. It is not a criterion of market value. The so-

called lessee is merely speculating on the possibility that oil in paying quantities will be found in the land and developed. Probable future profits based upon conjecture are too remote to aid in the determination of market value. Sharp v. United States, 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211; United States v. Meyer, 7 Cir., 113 F.2d 387, 397.

Appellants next complain of the exclusion of testimony relating to the effect of dry holes drilled on land near the land taken on market value of mineral rights.

Appellants' witness Lynn Goodwin, a resident of El Dorado, Arkansas, testified that for 20 or 25 years he had been engaged in the real estate business, principally in oil properties, leases, royalties, and minerals; that he was familiar with the land involved in this litigation; and that a number of dry holes had been drilled in the county. The complaint here is that the court erred in sustaining objections to two questions propounded to the witness on redirect examination. The questions were:

1. Mr. Goodwin, do you know where the dry holes have been drilled over there? Are any of those dry holes close enough to condemn this land?

2. What do you know about the Government's regulation, if anything, as to how close a dry hole must be in order to deduct a royalty; that is, the investment in the royalty and take the benefit of it in income taxes?

No offer to prove what the witness would answer in response to the first question was made. Following the ruling on objection to the second question counsel said: "I expect to show by the witness that the Government will not allow any deduction unless the well is closer than a mile and a half to the area."

█ █ The court was justified in refusing to permit the witness to answer these questions. The witness had not qualified as an expert competent to answer either question. Besides, appellants later in the trial called two geologists who qualified as experts. They were permitted to describe the geological formations of the country for many miles around and under the tract in question with respect to its oil bearing and possible oil-bearing sands and to explain the teaching of dry holes in proximity to the tract in question. Their testimony was pertinent and admissible, whereas Goodwin was not shown to be competent. The court did not abuse its discretion in rejecting his testimony. Foster v. United States, 8 Cir., 145 F.2d 873, 877.

█ The third proposition advanced by appellants, namely, that the valuation of property by tax assessors for tax purposes is not admissible to establish market value in condemnation proceedings is correct; but it is not applicable to the testimony admitted in evidence of which complaint is made.

M. P. Morton, a witness for the appellants, testified that he is an employee of the appellant Southern Company; that The Southern Company owns the same property that the Stout Lumber Company formerly owned; that The Southern Company entered into a contract with one Joe Hurley which provided for exploratory work for oil on the lands in Calhoun county; that Hurley located three blocks of land there for exploration and leases were drawn to be delivered when the wells were started; but that the parties "fell out" among themselves and did not drill.

On cross examination the witness testified that he had also been an employee of the Stout Lumber Company when it owned the land conveyed to The Southern Company. He testified that these lands were assessed for taxes in the years 1935, 1936, and 1937; that a suit was brought by the owner to enjoin the assessing and collection of taxes for the year 1936, and that as agent for the owner he wrote two letters to the assessor in regard to the proposed assessment, the letters being dated September 16 and October 23 respectively. Although the record does not disclose any objections to the introduction of these documents in evidence, the court said: "I am going to permit them to be introduced just for the purpose of casting such light as it may upon the value of the mineral rights at that time, not for the purpose of showing the assessment or the amount." Coun-

sel read to the jury from the letter of October 23, 1936, the statement: "The minerals have no market value, and, therefore, no assessable value, and for that reason I cannot * * * list them for taxation." And from the letter of September 16, 1936: "Now I want it distinctly understood that we are not making an assessment for we do not believe the minerals are assessable for the reason that they have no market value, and, therefore, 'no assessable value." The equity complaint for an injunction was introduced in evidence to exhibit paragraph 2 thereof which reads: "2. That none of said mineral rights had any actual cash or market value."

 The only objection to the introduction of these exhibits found in the record appears in the motion for a new trial. The only question presented for our consideration, therefore, is whether the admission of the exhibits was so erroneous and prejudicial as to constitute abuse of discretion in denying the motion for new trial. We think not. It will be observed that the testimony did not disclose the amount of any assessment for taxes levied on the minerals. The testimony consisted entirely of statements made by the agents of the owner of the land as to the market value of the minerals. These statements now appear to be against the interest of the owner. While an actual assessment for taxes made by a public officer is not admissible on a trial to establish market value, a tax return or a statement of. value made by the owner is admissible as an admission against interest. McCandless v. United States, 9 Cir., 74 F.2d 596, 603-4; Dubinsky Realty Co. v. Lortz, 8 Cir., 129 F.2d 669, 673; Bowie Lumber Co. v. United States, 5 Cir., 155 F.2d 225, 228; Redman v. United States, 4 Cir., 136 F.2d 203, 206; Rogers v. Edward L. Burton & Co., 10 Cir., 137 F.2d 284. The last cited case is authority for the rule that the admission of an agent is admissible against his principal. There was no abuse of discretion in denying the motion for a new trial because of the admission of testimony of the witness Morton.

Appellants' fourth proposition is that the court erred in admitting evidence of low or no value of mineral rights on lands too remote from the land in controversy. Neither the name of the witness, the question, the objection, the ruling of the court, nor the page of the printed record on which the testimony referred to appears is stated. Appellee in its brief conjectures that reference to the testimony of the witness Noah is intended. We have accordingly examined the record of this witness and we find no erroneous ruling on any objection interposed by appellants' counsel.

Finally, appellants contend that the court abused its discretion in denying the motion for a new trial on the basis of newly discovered evidence. In their brief appellants say "The most important feature of the newly-discovered evidence, however, is the facts surrounding the settlements the Government made with the two principal owners of the surface rights" of land in the tract condemned.

 It is elementary that a new trial should not be granted on the ground of newly discovered evidence unless the alleged new evidence is admissible in support of the issue. Here the issue was the market value of the mineral rights owned by appellants. In United States v. Foster, 8 Cir., 131 F.2d 3, 5, certiorari denied, 318 U.S. 767, 63 S.Ct. 760, 87 L.Ed. 1138, this court said: "Testimony of the price paid by the condemnor for other tracts is not admissible." See, also, United States v. 13,255.53 Acres of Land, Etc., 3 Cir., 158 F.2d 874, 877; Justice v. United States, 9 Cir., 145 F.2d 110, 111.

In their brief counsel discuss other minor contentions on the strength of which they say a new trial should have been granted. We have examined all these arguments and find they are without merit. One argument urged with much emphasis is that the jury was prejudiced, or at least may have been prejudiced. No relevant fact is cited to support the argument. The thought is based upon a conjecture which in turn is based upon the proximity of the locality in which some of the jurors resided to a part of the lands condemned. Clearly the argument is without merit.

We find no reversible error in the record. The judgment is, therefore, affirmed.