CITY OF KALAMAZOO *v.* BALKEMA.

1. EMINENT DOMAIN—CONSTITUTIONAL LAW—"NECESSARY" AND "ESSENTIAL" INTERCHANGEABLE.

In proceedings by city to condemn land for playgrounds of park, use by judge in his charge of word "necessary" as used in Constitution (article 13, § 1) interchangeably with word "essential" as used in city charter, was not error.

2. SAME—INSTRUCTIONS.

Instruction that said improvement must be found to be useful and convenient and essential to the welfare of the public was not error.

3. SAME—EVIDENCE—COMPENSATION.

There was no error, in condemnation proceedings, in sustaining objection to question as to what witness was willing to pay for land sought.

4. SAME—OFFER TO PURCHASE AS EVIDENCE OF MARKET VALUE.

In order to establish market value of land sought in condemnation proceedings by offer to purchase, there must at least be showing of *bona fide* offer.

Appeal from Kalamazoo; Weimer (George V.), J. Submitted October 22, 1930. (Docket No. 89, Calendar No. 35,087.) Decided December 2, 1930.

Condemnation proceedings by the city of Kalamazoo, a municipal corporation, against Ralph Balkema and another, to condemn land for park purposes. From an order affirming verdict for plaintiff, defendants appeal. Affirmed.

*Marvin J. Schaberg,* for plaintiff.

*Harry C. Howard,* for defendants.

BUTZEL, J.   The city of Kalamazoo, plaintiff, brought condemnation proceedings in order to acquire six lots belonging to defendants.   These lots adjoin Upjohn Park, which is centrally located and not far from the business district of Kalamazoo.   It was desired to acquire defendants' property for the extension of the playgrounds of the park so as to provide for baseball grounds and a football field. The jury determined that there was a necessity for taking the property and awarded defendants the sum of $7,500 as compensation.   Defendants have appealed and claim a number of errors.

It is claimed that the proceedings are illegal and unauthorized by the Constitution of the State of Michigan and the charter of the plaintiff.   Section 1, Art. 13, of the Constitution of the State of Michigan provides as follows:

"Private property shall not be taken by the public nor by any corporation for public use, without the necessity therefor being first determined and just compensation therefor being first made or secured in such manner as shall be prescribed by law."

The provisions of plaintiff's charter applicable to the condemnation of private property are as follows:

"The city shall have, and it is hereby given the power to purchase or condemn private property, within or without the city, for any public use within the scope of its power.   To that end the city commission subject to the general laws of the State, whenever it deems the same essential for the welfare of the inhabitants of the city, may acquire by gift, purchase, condemnation or otherwise, the necessary property for the purpose in view."   Section 97.

"The city commission shall by ordinance provide for acquiring by condemnation or otherwise, such property and rights as may be required for any public use or property within the scope of its power in the manner prescribed by the statutes of the State of Michigan." Section 138.

It is claimed that there is a difference between the term "necessary" as used in the Constitution, and the term "essential" as used in the city charter, and that the circuit judge in his charge used these two terms interchangeably as if they both had the same meaning. The lexicographers define "necessary" as "essential," and "essential" as "necessary." These words are frequently used interchangeably, as may be readily seen when the context of section 97 of plaintiff's charter is examined. In referring to the condemnation of property essential to the welfare of the city, it provides that "the necessary property for the purpose in view" may be taken.

Chief Justice Marshall in *M'Culloch* v. *Maryland,* 4 Wheat. (U. S.) 316, stated:

"Is it true, that this is the sense in which the word *'necessary'* is always used? Does it always import an absolute physical necessity, so strong, that one thing, to which another may be termed necessary, cannot exist without that other? We think it does not. If reference be had to its use, in the common affairs of the world, or in approved authors, we find that it frequently imports no more than that one thing is convenient, or useful, or *essential* to another."

Further error is claimed in that the judge charged that the improvement must be found to be useful and convenient and essential to the welfare of the public. The charge was correctly given and is in

accordance with the language used in the case of *Commissioners of Parks* v. *Moesta,* 91 Mich. 149.

Error is further claimed in that the court sustained an objection to a question propounded to one of defendants' witnesses who testified as to the value of the property sought to be acquired. After stating that the value of the lots was $6,000 a lot, he was interrogated and answered as follows:

"*Q.*   Are you willing to pay that for them?
"*A.*   I am willing to pay $35,000."

An objection to this question was sustained although the answer was not stricken out, and the same testimony was later brought out on cross-examination by plaintiff's counsel. In order to establish market value by an offer, one must at least show that there has been a *bona fide* offer made for the property. If this were not the rule, offers might be secured in an amount far in excess of the real value of the property in question. Witnesses testifying to what they would give for property would be secure in the knowledge and belief that they would not be bound to carry out the offer. To admit such testimony might open the door to perjury.

In the case of *Perkins* v. *People,* 27 Mich. 386, Mr. Justice COOLEY, speaking for the court, said:

"What land has sold for may sometimes, and under some circumstances, be very satisfactory evidence of value; but testimony as to what has been offered for it, is so much open to suspicion and so inviting to fraud, unless the offer was at a judicial or other public sale, or under other circumstances furnishing like security of good faith in making it, that it must generally be very untrustworthy and unreliable."

The same question arose in *Sharp* v. *United States*, 191 U. S. 341 (24 Sup. Ct. 114), where the court stated as follows:

"Upon principle, we think the trial court was right in rejecting the evidence. It is, at most, a species of indirect evidence of the opinion of the person making such offer as to the value of the land. He may have so slight a knowledge on the subject as to render his opinion of no value, and inadmissible for that reason. He may have wanted the land for some particular purpose disconnected from its value. Pure speculation may have induced it, a willingness to take chances that some new use of the land might in the end prove profitable. There is no opportunity to cross-examine the person making the offer, to show these various facts. Again, it is of a nature entirely too uncertain, shadowy and speculative to form any solid foundation for determining the value of the land which is sought to be taken in condemnation proceedings. If the offer were admissible, not only is it almost impossible to prove (if it exists) the lack of good faith in the person making the offer, but the circumstances of the parties at the time the offer was made as bearing upon the value of such offer may be very difficult, if not almost impossible, to show. To be of the slightest value as evidence in any court, an offer must, of course, be an honest offer, made by an individual capable of forming a fair and intelligent judgment, really desirous of purchasing, entirely able to do so, and to give the amount of money mentioned in the offer, for otherwise the offer would be but a vain thing. Whether the owner himself, while declining the offer, really believed in the good faith of the party making it and in his ability and desire to pay the amount offered, if such offer should be accepted, or whether the offer was regarded as a mere idle remark, not intended for ac-

ceptance, would also be material upon the question of the *bona fides* of the refusal. Oral and not binding offers are so easily made and refused in a mere passing conversation, and under circumstances involving no responsibility on either side, as to cast no light upon the question of value. It is frequently very difficult to show precisely the situation under which these offers were made. In our judgment they do not tend to show value, and they are unsatisfactory, easy of fabrication, and even dangerous in their character as evidence upon this subject. Especially is this the case when the offers are proved only by the party to whom they are alleged to have been made, and not by the party making them. There is no chance to cross-examine as to the circumstances of the party making the offer in regard to good faith, etc.''

To like effect are: *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Alexander,* 47 Wash. 131 (91 Pac. 626); *Keller* v. *Paine,* 34 Hun (N. Y.), 167; *Shebley* v. *Quatman,* 66 Ore. 441 (134 Pac. 68).

Other errors claimed are that the taking of the land was not essential and necessary for the welfare of the city, and that the amount awarded defendants is inadequate, etc. These questions were decided by the jury and there is ample testimony to justify the verdict.

The judgment on the verdict is affirmed.

WIEST, C. J., and CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.