381 Mich. 23 (1968)
158 N.W.2d 884
WESTERN MICHIGAN UNIVERSITY BOARD OF TRUSTEES
v.
SLAVIN.
Calendar No. 33, Docket No. 51,742.
Supreme Court of Michigan.
Decided June 10, 1968.
Rehearing denied July 20, 1968.
*25 H. James Starr and Ford, Kriekard, Brown & Staton (Henry Ford, Jr., of counsel), for plaintiff.
Badgley, Domke, McVicker & Marcoux, and Bauckham & Reid, for defendants.
O'HARA, J.
This appeal arises out of eminent domain proceedings instituted by the plaintiff board of trustees of Western Michigan university against defendants Leon Slavin and Ruth Slavin.
The defendants are owners of certain real property within the township of Kalamazoo, Michigan. It is adjacent to the campus of plaintiff university.
On November 20, 1964, plaintiff adopted a resolution reciting a need for additional dormitories and reciting that it did not own land which could be utilized for dormitory construction. The resolution concluded that it was necessary for plaintiff to take a portion of defendants' land which consists of 38.09 acres.
On November 23, 1964, plaintiff filed a petition for condemnation in the circuit court for the county of Kalamazoo under authority of PA 1911, No 149.[1] Trial in this cause commenced October 26, 1965 and continued for 14-1/2 days. A major issue involving considerable time in discovery proceedings and during the trial of this cause, was the question of necessity. In view of our decision upon the question of admissibility of certain evidence, we do not deem it appropriate to pass on this question judicially. *26 We do regard it appropriate to remark that under the sweeping provisions of the statute which accords to "any public corporation or state agency" the power of eminent domain the question of necessity is and should be much more than pro forma. The simple declaration of necessity by the empowered agency does not establish that necessity.
It remains established law under the Constitution of 1963 as it did under its predecessor Constitution of 1908:
"The words `necessity for using such property' in our Constitution does not mean an indefinite, remote, or speculative future necessity, but means a necessity now existing or to exist in the near future."[2]
The legal principle which is decisionally critical has thus been stated by our Court:[3]
"It is a recognized rule of this Court in condemnation cases that strict rules as to the admissibility of testimony are not always enforced, that ordinarily this Court will not set aside the award because of the introduction of improper evidence or improper rulings of a trial judge where one attends, but that where prejudicial, inadmissible testimony was received and acted upon by the jury, or where competent testimony going to the merits was excluded which if admitted would have changed the result, * * * this Court upon appeal will reverse."
Regrettably, we conclude that competent testimony going to the merits was excluded in this case. We say "regrettably" because the result of 14-1/2 days of trial should not be lightly disturbed. Whether the testimony, if admitted, would have *27 changed the result, we cannot say. The weight and credibility to be accorded that testimony and the excluded exhibit were for the jury. However, the excluded testimony and exhibit were the basic support of the defendants' whole theory of fair market value of the land under condemnation. We hold it should have been admitted.
The proposed exhibit designated at trial A-4 was alleged to be an agreement for the sale of the involved property for $620,000. Defendants contend vigorously it was a contract of sale, subject only to the outcome of the condemnation proceedings and a number of "ordinary" conditions appearing in such contracts. The pendency of the condemnation proceedings is specifically noted in the agreement. Plaintiff contrariwise contends with equal vigor that it was at best a conditional offer of sale, contingent upon the outcome of soil tests, financing, and zoning approval.
The circuit judge required the examination relating to the document to be made on a separate record after excusing the jury. At the conclusion of the examination he excluded it. We quote from his ruling:
"Exhibit A-4 has just been examined by the court, and as I have indicated, I believe, may be considered as being before this court but not before this jury, the court not having ruled on the admissibility of the exhibit so far as the jury is concerned. * * *
"Before the court at this time for determination is the admissibility of exhibit A-4. Exhibit A-4 is a document entitled `Sales Agreement'.
"Apparently, it was entered into between the defendants in this action and a corporation known as Scholz Homes, Inc., on October 22, 1965.
"The trial of this case commenced on October 26, 1965, and we have been engaged in the trial of this case every day commencing with October *28 26, with the exception of a holiday, armistice day, and Saturdays and Sundays, except that we did have a trial session on last Saturday morning from 9:30 to about 12:15.
"Counsel for the plaintiff stated in his argument that the proposed exhibit was not submitted to him until the day before the trial, which would be the 25th; and as a matter of practicality, considering it might have been impossible for counsel for the defendants to submit it to him at any earlier date, the agreement, if arrived at on its date, was entered into on a Friday, and according to Mr. Starr was submitted to him on the following Monday.
"Obviously, counsel for the plaintiff have not been in any position to prepare any evidence to counteract the evidentiary weight of this exhibit if it is admitted.
"This has been a strenuous trial, a time-consuming trial, and I am certain that the time of all counsel on both sides of the table has been completely taken up by their conduct of the trial in the courtroom and the work they necessarily had to do between court sessions.
"These remarks that I have just made go to the contention of Mr. Starr that the rules laid down by this court in a pretrial memorandum have not been followed, and that would appear to be the case. However, in denying the admissibility of this piece of evidence, this court is relying upon the document itself.
"It is, on its face, an agreement between Mr. and Mrs. Slavin and the corporation which is conditional upon the happening of certain events. Now, it is all very well to say that one or more of these are just matters that appear in all contracts, that they are the usual and customary provisions. That may be true and it undoubtedly is true, but still it is a condition and provision of the contract that can be relied upon by either party.[4]
*29 "Here we have a purported sales agreement entered on almost the very eve of trial by the defendants and an Ohio corporation. All that we know about the Ohio corporation is what we heard from its vice-president in charge of acquisition of properties, who testified this morning. His testimony was in no way documented. He did not have any of the records  or let me say he did not produce any of the records of the corporation. He referred in his testimony to a bank statement of the corporation of September of this year showing that at that time the bank had several million dollars in its account. This might mean something or nothing now, as of today.
"Actually, this court knows practically nothing about this corporation and knows nothing about this corporation except what we heard from the witness this morning. There has not been a showing which satisfies this court of the bona fideness of the alleged agreement.
"Furthermore, the agreement, on its face, is a conditional agreement. The obligation of the purchaser is conditioned upon financing and upon 1 or 2 other matters. It is not such an offer or such a contract of purchase as in this court's opinion could properly be considered by the jury or should properly be considered by the jury in its determination of the fair cash value of the Slavin land. The objection to the exhibit is sustained. The exhibit will not reach the jury."
By case precedent we have recognized the right of the judge supervising condemnation proceedings to rule on the admissibility of an offer to purchase. As late as 1965, after the effective date of the Constitution *30 of 1963[5] we held:[6]
"We cannot say that the court was in error in finding that, thus, the owners were left without such showing of bona fides of the offer as to make it admissible." (Emphasis supplied.)
It is to be noted that in Ellis there was no question that the instrument was a written offer. Our Court, in Ellis, quoted at length from City of Kalamazoo v. Balkema (1930), 252 Mich 308. Quoting Balkema, we said in Ellis (pp 411, 412):
"`In order to establish market value by an offer, one must at least show that there has been a bona fide offer made for the property. If this were not the rule, offers might be secured in an amount far in excess of the real value of the property in question. Witnesses testifying to what they would give for property would be secure in the knowledge and belief that they would not be bound to carry out the offer. To admit such testimony might open the door to perjury.
"`In the case of Perkins v. People (1873), 27 Mich 386, Mr. Justice COOLEY, speaking for the Court, said (pp 388, 389):
"`"What land has sold for may sometimes, and under some circumstances, be very satisfactory evidence of value; but testimony as to what has been offered for it, is so much open to suspicion and so inviting to fraud, unless the offer was at a judicial or other public sale, or under other circumstances furnishing like security of good faith in making it, that it must generally be very untrustworthy and unreliable."'" (Emphasis supplied.)
The law as to the admissibility of an offer to purchase is settled by Balkema and Ellis. We point *31 out, however, that part of the ratio decidendi of Balkema and Ellis is to be found in the following sentence:
"`Witnesses testifying to what they would give for property would be secure in the knowledge and belief that they would not be bound to carry out the offer.'" Ellis, supra, p 411 (quoting Balkema).
Such is not the situation with the case at bar. An offer is a unilateral declaration of intention. A sales agreement is by its nature bilateral, binding upon both parties, enforceable, if need be, by either. The instrument here under consideration recites:
"Seller agrees to sell to purchaser and purchaser agrees to purchase from seller, under the terms and conditions hereinafter contained the following described land * * *."
We do not find that the settled law as to an offer is controlling as to a bilateral purchase and sale agreement.[7] We cannot escape the conclusion that the able circuit judge in his commendable zeal to exclude from jury consideration what he considered inadmissible testimony and an inadmissible exhibit, in legal effect passed upon the weight to be accorded to the exhibit and determined the credibility of the defendants' witness. As previously noted in his ruling he said:
"Here we have a purported sales agreement entered into on almost the very eve of trial. * * * All that we know about the Ohio corporation is *32 what we heard from its vice-president. * * * He referred * * * to a bank statement * * * showing that at that time the bank [corporation] had several million dollars in its account. This might mean something or nothing now, as of today.
"Actually, this court knows practically nothing about this corporation * * * except what we heard from the witness this morning." (Emphasis supplied.)
The witness was the vice-president of the company. He executed the agreement. He testified that the company stood willing to purchase the property that day if permitted. He testified that financing was available, that the conditions of favorable soil reports was a mere formality and a standard clause in purchase agreements. When all of the foregoing testimony did not reach the jury, and the purchase and sale figure of $620,000 was excluded, we are constrained to conclude that the judge ruled not upon the bona fides of the transaction, but upon the bona fides of the parties to the transaction. This under our settled law he is not permitted to do.
"The trial judge very carefully charged the jury, we think, that the good faith of the parties to the transaction was not an issue, but that the value fixed by the transaction should be considered by the jury in making their award if the transaction was in all regards a bona fide transaction." (Emphasis supplied.) City of Detroit v. Fidelity Realty Co., supra, pp 455, 456.
We are unable to find proof of lack of the bona fides of the transaction separate from the inescapable conclusion that the trial judge was not convinced that the parties did not act in good faith. If, as he previously observed, "counsel for the plaintiff have not been in any position * * * to *33 counteract the evidentiary weight of this exhibit if it is admitted" we think it was his duty instanter to adjourn the proceedings to learn the nature of rebuttal evidence if plaintiff desired to prepare any, and, if necessary, to give plaintiff time to prepare it. Its relevancy can hardly be doubted, for it was offered in support of the testimony of the witness Bloom that his company stood ready to buy the property at the $620,000 price. It was material because it went to the very issue in dispute. The witness Bloom was not found incompetent to testify in relation to it.
For the reasons herein set forth, the award of the jury is vacated. Costs to the defendants.
DETHMERS, C.J., and KELLY, BLACK, SOURIS, and T.E. BRENNAN, JJ., concurred with O'HARA, J.
ADAMS, J. (dissenting).
I do not believe the trial judge erred in refusing to admit in evidence the agreement for sale of the property for $620,000. In a pretrial memorandum, entered August 31, 1965, it was provided:
"It is further ordered that on or before October 15 all exhibits to be used at the trial shall be submitted to opposing counsel for examination. In the event that some exhibit is discovered or prepared after October 15, it shall be shown to opposing counsel forthwith, and all counsel reserve the right to object if the time of exhibition of such exhibit comes too near commencement of the trial to permit them to meet such evidentiary weight that the exhibit may have by the preparation of proofs to counteract it. No exhibits shall be received at the trial which have not been processed in the above manner."
The Scholz Homes, Inc., agreement was entered into on October 22, 1965. It was submitted to *34 counsel for plaintiff on October 25, 1965. Trial began October 26, 1965.
The trial judge, in part, found:
"This has been a strenuous trial, a time-consuming trial, and I am certain that the time of all counsel on both sides of the table has been completely taken up by their conduct of the trial in the courtroom and the work they necessarily had to do between court sessions.
"These remarks that I have just made go to the contention of Mr. Starr that the rules laid down by this court in a pretrial memorandum have not been followed, and that would appear to be the case."
The purported sales agreement,[1] entered into on the eve of the trial, certainly contains enough loopholes *35 for it to be characterized, as it was by the trial judge, as a conditional agreement. When an agreement contains as many conditions allowing disaffirmance or nonperformance as this one does, and *36 when that agreement is sprung upon opposing counsel the day before trial, in view of the express provisions of the pretrial memorandum, it was not error for the judge to deny its admission.
I vote to affirm the Court of Appeals.
T.M. KAVANAGH, J., concurred with ADAMS, J.
NOTES
[1] CL 1948, § 213.21 et seq., as amended by PA 1958, No 71 (Stat Ann 1958 Rev § 8.11 et seq.).
[2] Grand Rapids Board of Education v. Baczewski (1954), 340 Mich 265, 269.
[3] City of Detroit v. Fidelity Realty Co. (1921), 213 Mich 448, 454.
[4] In this observation the learned trial judge was not entirely correct; the option is the purchaser's only. The proviso reads:

"It is further understood that purchaser shall be under no further obligation hereunder in the event that soil tests, to be made at purchaser's expense, indicate unfavorable conditions in purchaser's opinion for the construction of apartments." (Emphasis supplied.)
[5] Article 10, § 2: "Private property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law. Compensation shall be determined in proceedings in a court of record."
[6] City of Grand Rapids v. Ellis (1965), 375 Mich 406, 412.
[7] Cases from other jurisdictions recognize the difference between an offer of purchase and a contract therefor. See: Brush Hill Development, Inc., v. Commonwealth (1959), 338 Mass 359 (155 NE2d 170); Wolf v. Commonwealth (CA 1, 1965), 341 F2d 945; Virgin Islands Housing Authority v. 15.5521 Acres of Land in St. Croix, Virgin Islands (DC VI, 1964), 230 F Supp 845; State Road Commission of Maryland v. Wyvill (1966), 244 Md 163 (223 A2d 146); State v. Clevenger (1964, Tex), 384 SW2d 207; People v. Kawamoto (1964), 230 Cal App 2d 18 (40 Cal Rptr 685); City of East Orange v. Crawford (1963), 78 NJ Super 239 (188 A2d 219).
[1] The body of the sales agreement reads as follows:

"1. Seller agrees to sell to purchaser and purchaser agrees to purchase from seller, under the terms and conditions hereinafter contained, the following described land and premises situated in the township of Kalamazoo, Kalamazoo county, Michigan:
"That part of the east 1/2 of the northeast 1/4 of the southwest 1/4 of section 17, T. 2 S., R. 11 W., lying south of West Main street, and that part of the southeast 1/4 of the southwest 1/4 of said section not included within the plat of Knollwood and containing 38.9 acres, more or less.
"Subject to conditions, restrictions, and easements of record.
"2. The purchase price therefore shall be computed at the rate of $16,000 per acre, as disclosed by competent survey, and which is estimated to approximate $620,000. The exact purchase price shall be determined by multiplying the number of acres therein contained, as determined by a registered land surveyor, times the rate of $16,000 per acre.
"3. The foregoing purchase price shall be paid by purchaser to seller, as follows:
"1/4th thereof, less the sum of $1,000 paid herewith, on or before 90 days following the termination by a judgment of no necessity, dismissal or discontinuance of the pending condemnation proceedings involving said land and the entry of the order dismissing the lis pendens filed against said property by the board of control of Western Michigan University which shall be satisfactory to purchaser's attorney; 1/4th thereof, or more, on or before 24 months following the date of the first 1/4th payment hereinbefore provided; 1/4th thereof, or more, on or before 36 months following the date of said first 1/4th payment; and 1/4th thereof, or more, on or before 48 months following the date of said first 1/4th payment. Interest to be computed on the unpaid balance of principal annually at the rate of 5% per annum and paid annually in addition to the foregoing principal payments.
"4. It is further understood and agreed that purchaser shall be entitled to the conveyance by stamped warranty deed of a pro rata portion of the land, commensurate with the amount of principal paid to seller at the time of payment.
"5. Seller shall furnish to purchaser, upon demand, an abstract of title disclosing a merchantable title of record in seller, free of all liens and encumbrances except utility easements of record, if any. Purchaser shall be entitled to retain said abstract as his own property, from and after the payment of the first quarterly installment due hereunder.
"It is understood that the land is presently subject to a lis pendens in favor of the board of control of Western Michigan University, which must be discharged to the satisfaction of purchaser's attorney prior to any further obligation accruing hereunder against purchaser.
"It is further understood that purchaser shall be under no further obligation hereunder in the event that soil tests, to be made at purchaser's expense indicate unfavorable conditions in purchaser's opinion, for the construction of apartments.
"Seller agrees to furnish, at seller's expense, public sanitary sewer line to service the said land to the southerly boundary of the said land. Seller further warrants that city water is already available to the site. In the event the pending condemnation proceedings do not end with the discharge of said lis pendens and a determination that it is not necessary for said board of control to acquire said land by a judgment of no necessity, dismissal or discontinuance, the earnest money payment paid herewith shall be returned to purchaser. In the event that a portion only of said property is taken by eminent domain and a usable portion in the opinion of purchaser remains in seller for the construction of apartment buildings, the within agreement shall apply to such remaining usable portion at the same rates herein specified.
"6. All real estate taxes and assessments required to be paid against the property or any portion thereof, prior to the date the first installment payment herein provided for is actually paid, shall be paid by seller. Any and all real estate taxes and assessments thereafter coming due against said property shall be paid by purchaser.
"7. It is understood that the purpose of the within purchase is to construct apartment buildings upon the property. Any land restrictions or zoning which would make such purpose impossible will effect a termination of this agreement.
"8. It is recognized that Beverly drive is dedicated less than 66 feet in width and is an access road to the subject property. Should the county road commission of Kalamazoo or any other governmental unit require a road of greater width for such access, seller covenants and agrees to supply such additional width for such purpose at seller's expense.
"9. In executing the within contract, purchaser contemplates obtaining at least 80% financing for land acquisition, development and construction of apartment buildings. Purchaser acknowledges and represents that such financing is currently available to purchaser. In the event that equivalent financing as is now available to the purchaser, cannot be obtained by the purchaser within 90 days following the termination of the pending condemnation litigation on the basis herein described or within such additional period not exceeding 6 months from said termination of litigation, this contract shall become null and void and the earnest money payment shall be refunded.
"10. Time is deemed to be of the essence of this agreement and the same shall be binding upon the heirs, representatives and assigns of the seller and the successors and assigns of purchaser.
"11. Provided purchaser shall comply with the terms and conditions of this agreement to be observed by purchaser as herein recited, purchaser shall be entitled to a refund of all earnest money deposited by purchaser in the event seller cannot or does not for any reason comply with the terms and conditions hereof."