JACK LOEKS THEATRES, INC v CITY OF KENTWOOD

Docket No. 116593. Submitted November 13, 1990, at Grand Rapids. Decided June 3, 1991, at 9:30 A.M. Leave to appeal sought.

Jack Loeks Theatres, Inc., brought an inverse condemnation action in the Kent Circuit Court against the City of Kentwood after the city rejected the plaintiff's site plan for a proposed shopping center to be built on property it owned because the plan failed to make provision for the extension of an existing roadway that the city constructed across a portion of the plaintiff's property. Shortly before trial, the city conceded that there was a taking of the land which would be used for the roadway. At trial before George R. Cook, J., the plaintiff claimed that the taking of the land for the roadway substantially diminished the value of the remainder of its land, while the city claimed that the taking did not. The jury returned a verdict for the plaintiff, but in an amount consistent with the theory and proofs of the city. The plaintiff moved for a new trial, before H. David Soet, J., who, while agreeing that there had been errors, denied the motion because he could not say those errors had affected the verdict. Judge Soet also denied the parties' motions for attorney fees. The plaintiff appealed and the city cross appealed.

The Court of Appeals *held:*

Certain evidence presented by the city and admitted by the trial court was improper. While singly these errors might not have been sufficient to warrant a new trial, the cumulative effect unfairly prejudiced the plaintiff and allowed the jury to reach its decision on an improper basis. While this action is not controlled by the provisions of the Uniform Condemnation Procedures Act, the constitutional requirement that a property owner receive just compensation for land taken for public purposes mandates that a property owner who must institute an inverse condemnation action is to be afforded the same right

·    REFERENCES

Am Jur 2d, Eminent Domain §§ 428, 430, 441, 476, 478

See the Index to Annotations under Eminent Domain; Inverse Condemnation.

to attorney fees as an owner who has land taken in an action brought under the act, requiring remand for a new trial.

1. It was error for the trial court to admit evidence of offers which had been made to the plaintiff for the property but which had not been accepted for the purpose of establishing the market value of the plaintiff's land without first requiring that a proper foundation be laid by establishing that the offers had been made in good faith.

2. While the plaintiff could have sought the introduction of evidence of the assessed value of the property to establish market value, it was error to allow the defendant to introduce evidence for that purpose.

3. The trial court abused its discretion in permitting a witness for the defendant to testify as an expert where the matters at issue were within the knowledge of a lay person and no expert testimony was required.

4. It was error to permit testimony concerning an alternative development of the site where there was so little factual support for the claims made concerning the projected value of the site that the testimony amounted to mere speculation.

5. It was error to permit admission of a report by the city engineer during the examination of the mayor. The introduction of the document by someone other than the drafter effectively precluded cross-examination relative to its contents.

6. It was not an abuse of discretion to permit the jury to view the property.

7. The just compensation provision of the Michigan Constitution requires that a property owner who is forced to bring an inverse condemnation action be awarded attorney fees in the same manner and to the same extent as would be awarded to a property owner in a proceeding brought pursuant to the provisions of the Uniform Condemnation Procedures Act. Accordingly, because the defendant never made an offer, the plaintiff is entitled to reasonable attorney fees not to exceed one third of the final award.

Reversed in part, affirmed in part, and remanded.

1. EMINENT DOMAIN — EVIDENCE — OFFERS OF PURCHASE.

The market value of the property in a condemnation action may be established by evidence of an offer to purchase the property only where the party seeking admission of the evidence has laid a proper foundation by showing that the offer to purchase was a bona fide offer made with the intent that it be accepted.

2. EMINENT DOMAIN — EVIDENCE — ASSESSED VALUATIONS.

Evidence of the value assessed for tax purposes of property in a

condemnation action may be introduced by the owner of the property for the purpose of establishing its market value; however, evidence of the assessed value may not be introduced for that purpose by the governmental body seeking to take the property.

3. EMINENT DOMAIN — INVERSE CONDEMNATION — UNIFORM CONDEMNATION PROCEDURES ACT — ATTORNEY FEES.

The provisions of the Uniform Condemnation Procedures Act are not applicable in an inverse condemnation action initiated by an aggrieved property owner; however, the just compensation requirement of the Michigan Constitution that requires that a property owner be placed in as good a position as if there had been no taking of the property entitles the owner to the same attorney fees as would be permitted pursuant to the Uniform Condemnation Procedures Act: reasonable attorney fees not to exceed one-third of the difference between any offer by the condemnor and the ultimate award (Const 1963, art 10, § 2; MCL 213.66[3]; MSA 8.265[16][3]).

4. EMINENT DOMAIN — MARKET VALUE — HIGHEST AND BEST USE.

The market value of property taken in a condemnation action is the value of its highest and best use if it is reasonably probable that the property could be adaptable to that use in the immediate future or within a reasonable time.

*Warner, Norcross & Judd* (by *John H. Logie* and *Douglas A. Doseman*), for the plaintiff.

*Clary, Nantz, Wood, Hoffius, Rankin & Cooper* (by *Robert L. DeJong* and *Jeffrey V. H. Sluggett*), for the defendant.

Before: MICHAEL J. KELLY, P.J., and GRIBBS and SHEPHERD, JJ.

SHEPHERD, J. In this inverse condemnation action, plaintiff, following a jury verdict in its favor of $104,544, appeals as of right the denial of its motion for new trial and the denial of its motion for attorney fees. Defendant cross appeals, claiming that it was improperly denied attorney fees under MCR 2.405 and that, in the event of a new

trial in this matter, plaintiff should be precluded from admitting evidence concerning projected rental income from the undeveloped property because that income is too remote and speculative. We reverse in part, affirm in part, and remand this matter for a new trial.

At issue here is an approximately nineteen-acre parcel of land owned by plaintiff in the City of Kentwood. The property, currently undeveloped but zoned for commercial use, is located on 28th Street, a very busy commercial strip in the Grand Rapids area. Running parallel to 28th Street, 29th Street terminates at one side of plaintiff's property and begins again at the opposite side. Defendant's master plan provides for a connection of 29th Street through plaintiff's property, essentially bisecting it, but this portion of the road has never been built. Construction of 29th Street would consume 1.6 acres of plaintiff's property, and it is this acreage and its effect on the remaining property which is at issue here.

In 1985, plaintiff began developing plans for building a shopping center on the property which would have included an 80,000-square-foot Builders Square as the anchor store. Negotiations with Builders Square continued, and, later, discussions were had with other, smaller potential tenants. Eventually, a preliminary site plan was submitted to defendant's city planner, who rejected it because it made no provision for 29th Street running through the property. Plaintiff's subsequent appeals of this decision to the city planning commission and city commission were unavailing. Plaintiff submitted a second plan, with 29th Street running through the property, but this too was rejected because the configuration of the road allegedly did not conform to defendant's master plan. Builders

Square eventually built its store on another site approximately a mile from plaintiff's property.

Plaintiff instituted this action in October 1986, but it was not until a few days before trial, almost two years later, that defendant admitted there was a taking. Consequently, the sole issue at trial was the amount of "just compensation" to which plaintiff was entitled. At trial, the parties' methods for determining the value of the property taken and the effect of the taking, if any, on the remaining land differed significantly. Plaintiff asserted that the taking of the 1.6 acres greatly diminished the value of the surrounding property because it divided it, thus allowing for much less lucrative development of the remainder, resulting in the loss of substantial income from the failure of the proposed shopping center. Just compensation, as determined by plaintiff's witnesses, utilizing what is known as the "income approach" to valuation, ranged from $2,970,000 to $8.6 million dollars. Defendant, on the other hand, using a "market approach" to valuation, claimed that the property taken was worth only $104,544 and that its taking did not diminish the value of the remainder. As noted previously, the jury awarded plaintiff $104,-544 in damages.

The parties' posttrial motions were heard by a judge other than the one who presided over the trial, because of the death of the latter. In its motion for new trial, plaintiff raised the issues it raises here. The lower court agreed there had been errors, but nonetheless denied plaintiff's motion because, not having presided over the trial and not having the benefit of transcripts, it could not say these errors affected the verdict. Both parties also subsequently moved for, but were denied, attorney fees.

Before we address the precise issues raised by

the parties, we believe it is necessary to first reiterate some general principles applicable to eminent domain proceedings and the determination of just compensation for property taken for public use, particularly where, as here, only part of a parcel is taken.

As stated by our Supreme Court in *Electro-Tech, Inc v H F Campbell Co,* 433 Mich 57, 88-89; 445 NW2d 61 (1989), cert den — US —; 110 S Ct 721; 107 L Ed 2d 741 (1990), an inverse condemnation suit is one initiated by a landowner whose property has been taken for public use without the commencement of condemnation proceedings. A "taking" for purposes of inverse condemnation means that governmental action has permanently deprived the property owner of any possession or use of the property. When such a taking has occurred, the Michigan Constitution entitles the property owner to just compensation for the value of the property taken. Const 1963, art 10, § 2. This constitutional provision is liberally interpreted and nothing can be fairly termed just compensation which does not put the party injured in as good a position as it would have been had the injury not occurred. *In re Widening of Bagley Ave,* 248 Mich 1, 5; 226 NW 688 (1929).

There is no formula or artificial measure of damages applicable to all condemnation cases. The amount to be recovered by the property owner is generally left to the discretion of the trier of fact after consideration of the evidence presented. *Detroit v Michael's Prescriptions,* 143 Mich App 808, 811; 373 NW2d 219 (1985). Nonetheless, there are some general rules. For example, it has long been recognized in this state that where, as here, only part of a parcel is taken, "just compensation is to be determined by the amount which the value of the parcel from which it is taken is diminished.

The value of the part actually taken is allowed as direct compensation, but the decreased value of the residue of the parcel on account of the use made of the land is also allowable as compensation." *In re Grand Haven Hwy,* 357 Mich 20, 26; 97 NW2d 748 (1959), quoting *In re Widening of Michigan Avenue, Roosevelt to Livernois,* 280 Mich 539, 548; 273 NW 798 (1937). It is within these guidelines that we address the issues presented.

Plaintiff first raises a number of evidentiary issues, claiming the admission of certain evidence presented by defendant was improper. The rules regarding the admissibility of testimony are not always enforced strictly in condemnation cases. However, where prejudicial, inadmissible testimony was received and acted upon by the jury, on appeal this Court will reverse. *Western Michigan University Bd of Trustees v Slavin,* 381 Mich 23, 26; 158 NW2d 884 (1968). We find this to be the case with regard to several of the items or types of testimony to which plaintiff assigns error.

The first category of evidence improperly admitted was testimony concerning offers which had been made for the subject property or portions thereof, but which had never been accepted by plaintiff. While such offers are not, as plaintiff argues, always inadmissible, a proper foundation must first be laid for their introduction, and here that was not done. In order to establish market value by an offer, one must at least show there has been a bona fide offer made for the property. As was stated in *Kalamazoo v Balkema,* 252 Mich 308, 312-313; 233 NW 325 (1930), quoting *Sharpe v United States,* 191 US 341; 24 S Ct 114; 48 L Ed 211 (1903):

To be of the slightest value as evidence in any

court, an offer must, of course, be an honest offer, made by an individual capable of forming a fair and intelligent judgment, really desirous of purchasing, entirely able to do so, and to give the amount of money mentioned in the offer, for otherwise the offer would be but a vain thing. Whether the owner himself, while declining the offer, really believed in the good faith of the party making it and his ability and desire to pay the amount offered, if such offer should be accepted, or whether the offer was regarded as a mere idle remark, not intended for acceptance, would also be material upon the question of the *bona fides* of the refusal.

In the case at bar, no such foundation was laid for the testimony. Rather, the witness, Barrie Loeks, was simply asked to testify concerning the amounts of the various unaccepted offers. On remand, for such evidence to be admissible, defendant must lay a proper foundation by establishing that the offers were bona fide.

The next item to be addressed is the introduction by defendant of an internal memorandum from plaintiff's accountant. Defendant sought admission of this document for the purpose of revealing a $3.5 million offer for the property discussed therein. However, also contained within the document, introduced and published to the jury in its entirety, was inadmissible evidence concerning plaintiff's financial status, the tax implications of the subject offer, and so on. For this reason, the admission of the document into evidence was in error. If defendant is able to lay a proper foundation for the introduction of the unaccepted offer, as discussed above, that evidence, but only that evidence, would be admissible.

We next address the question of defendant's introduction of evidence concerning the assessed value of the property. Michigan has adopted the

minority view on this issue, restricting the introduction of such evidence to the property owner in a condemnation case on the ground that introduction by the property owner amounts to an admission against interest. See the companion cases of *In re Memorial Hall Site (Detroit v Cristy)*, 316 Mich 215; 25 NW2d 174 (1946), and *In re Memorial Hall Site (Detroit v Ehinger)*, 316 Mich 360; 25 NW2d 516 (1947). We therefore find that defendant, the party desiring to take the property, was improperly permitted to elicit such evidence in this case.

We further believe it was error to allow testimony by defendant's witness Professor Gregory Dimkoff regarding the sensitivity analysis he conducted on plaintiff's appraisal of the property which had utilized rental rates. The sensitivity analysis involved merely altering a figure or figures critical to plaintiff's calculation and determining how that change affected the end result.

The decision to admit or exclude expert testimony is within the sound discretion of the trial court and will not be reversed on appeal absent a clear abuse of discretion. *King v Taylor Chrysler-Plymouth, Inc*, 184 Mich App 204, 214; 457 NW2d 42 (1990). Pursuant to MRE 702, expert testimony may be received not only if "needed" or "necessary" but also when it will assist the trier of fact. *Slocum v Ford Motor Co*, 111 Mich App 127, 137; 314 NW2d 546 (1981). Thus, the requirements for the admission of expert testimony are: (1) the witness must be an expert; (2) there must be facts which require an expert's interpretation or analysis; and (3) the witness' knowledge must be peculiar to experts rather than to lay persons. *O'Dowd v Linehan*, 385 Mich 491, 509-510; 189 NW2d 333 (1971).

Here, these requirements were not met, and the

trial court abused its discretion in allowing Professor Dimkoff's "expert" testimony. Professor Dimkoff's analysis and testimony amounted to nothing more than performing simple mathematical operations which are clearly within the realm of the lay person. No expertise is required to substitute one number for another in a given equation so as to discern the difference in the result. Nor was any basis shown for the numbers he substituted into the equation. Professor Dimkoff had no real estate expertise, but merely plugged apparently random numbers into his analysis. By introducing such testimony, defendant was able to create a facade of expertise on what amounted to nothing more than basic mathematics and idle speculation. This was clearly impermissible.

Plaintiff next argues that defendant was improperly allowed to introduce two plans for development of the site which defendant claimed not only were viable and compatible with defendant's intended configuration for 29th Street but also would have produced greater income for plaintiff than the Builders Square project. These plans, referred to as the "Kentwood Plan" and "Texas Plan," were offered by defendant in support of its argument that the taking of property for, and construction of, 29th Street caused no diminution of the value of the remaining property. While generally such evidence would be admissible, we find that defendant failed to lay a sufficient foundation for the Kentwood Plan and that evidence of this plan was improperly admitted. The primary defect of this plan is that no cost analysis was conducted, the witness did not and could not determine the projected income to be derived from it, let alone what type of tenants could be obtained, and, consequently and most importantly, there was no testimony regarding what the value of the property

would be with this plan in place. The absence of this evidentiary support rendered the Kentwood Plan mere speculation. While it does not appear that a thorough cost analysis and study of the viability and profitability of the Texas Plan have been done, we believe there was a sufficient foundation laid for its admission into evidence and that plaintiff's objections to the plan bore on its evidentiary weight, not its admissibility.

With regard to the report of the city engineer concerning plaintiff's second proposed site plan, introduced at trial through the mayor of Kentwood and admitted into evidence in its entirety, we agree with plaintiff that this was hearsay within the definition of MRE 801(C). Contrary to defendant's assertion, this document was used to prove that plaintiff's alternate plan, providing for 29th Street but still allowing for the Builders Square store, was considered by defendant's engineer to be unsafe and would create potential liability for the city. By introducing this document through someone other than the drafter, defendant effectively precluded cross-examination relative to its contents. The mayor's testimony should have been confined to what actions were taken as a result of this report, matters within his personal knowledge.

The last of plaintiff's evidentiary objections concerns testimony by defendant's current city planner regarding his evaluation of plaintiff's preliminary site plan and how it nonetheless would have been rejected for reasons other than the 29th Street issue. Plaintiff claims that because defendant rejected the plan on the ground that it did not provide for 29th Street, defendant should have been confined to that ground. We disagree. While the 29th Street issue was originally deemed dispositive, the testimony at issue bore directly on the

question of the value of the property with plaintiff's plan in place. Specifically, the city planner testified concerning other problems with the plan, such as setbacks, which, while admittedly remediable, would have affected the cost of constructing the shopping center. These additional costs affected the net value of the project and, thus, the ultimate question of the compensation to which plaintiff was entitled. The trial court therefore did not err in allowing such testimony.

We also find no abuse of discretion on the part of the trial court in allowing the jury to view the property. MCR 2.513(A). In condemnation proceedings, a jury may view the premises as an aid in determining value. *In re Memorial Hall Site (Detroit v Cristy), supra,* p 220. Though plaintiff's property was zoned commercial, and plaintiff planned to develop it as such, the parties' dispute centered on the types of developments that could be implemented, and certainly the topography of the property and how it would affect such development, as well as vehicular access, visibility from main traffic routes, and so on, affected this question. Given the nature of the dispute and the factors involved in it, we cannot say the trial court abused its discretion in allowing the jury to view the property in its undeveloped state.

We turn now to the question whether the foregoing errors warrant the granting of a new trial. We believe they do. While singly they might not be sufficient, the cumulative effect of these evidentiary errors necessarily unfairly prejudiced plaintiff. The jury must have been persuaded that the taking of the strip of land for 29th Street caused no diminution of the value of the remaining property. The evidence improperly admitted bore directly on this issue.

Our disposition of the evidentiary issues raised

by plaintiff renders it unnecessary to address the claimed errors with respect to jury instructions. However, we will briefly address those that might arise on retrial to give the parties and the court guidance on remand.

First, the parties agree that the trial court erred in instructing the jury with respect to the testimony regarding the range of values of plaintiff's property, though they disagree with respect to the effect of the error. We simply caution the trial court to instruct properly the jury on remand regarding the highest and lowest values supported by the evidence. *Detroit v Hospital Drug Co,* 176 Mich App 634, 645; 440 NW2d 622 (1988); SJI2d 90.23.

With regard to the giving of supplemental, nonstandard instructions, it is within the trial court's discretion to give additional, concise, understandable, conversational, and nonargumentative instructions, provided they are applicable and accurately state the law. MCR 2.516(D); *Houston v Grand Trunk W R Co,* 159 Mich App 602, 608; 407 NW2d 52 (1987). A supplemental instruction need not be given if the instruction would neither add anything to an otherwise balanced and fair jury charge nor enhance the ability of the jurors to decide the case intelligently, fairly, and impartially. *Id.,* p 609.

We find no abuse of discretion in the trial court's failure to give plaintiff's proposed instructions regarding the effect of defendant's master plan and defendant's obligation to follow the law with regard to acquisition of property. While we do not condone defendant's conduct in this matter, these proposed instructions addressed matters that were not at issue. The sole question for resolution was and is just compensation.

Nor did the trial court abuse its discretion by

failing to give plaintiff's proposed instruction on a landowner's ability to testify concerning the value of the landowner's property. The instruction accurately stated the law, but it added nothing to the fair and balanced charge, which included SJI2d 90.22A regarding valuation witnesses.

The final issue raised by plaintiff concerns its entitlement to attorney fees under the Uniform Condemnation Procedures Act, MCL 213.51 *et seq.*; MSA 8.265(1) *et seq.* Plaintiff claims it should have been awarded attorney fees under § 16(3) of the UCPA, MCL 213.66(3); MSA 8.265(16)(3), while defendant asserts that the UCPA is not applicable to inverse condemnation proceedings. While we are constrained to find that the UCPA does not govern inverse condemnation actions, we believe a property owner in such proceedings is entitled to attorney fees as part of the "just compensation" guaranteed it by the Michigan Constitution.

In *Lim v Dep't of Transportation,* 167 Mich App 751, 755; 423 NW2d 343 (1988), this Court determined that the UCPA has no application to inverse condemnation cases initiated by aggrieved property owners. We discern no basis for taking issue with that determination. However, we also find no basis for disparate treatment of property owners whose land has been taken for public use based on which party initiated eminent domain proceedings. Indeed, it might even be argued that a property owner who is forced to initiate legal proceedings because of a governmental entity's failure or refusal to comply with constitutional and legislative dictates presents a more compelling case for reimbursement of the legal fees incurred as a result of the government's conduct. Be that as it may, the "just compensation" required by Const 1963, art 10, § 2 is that which places the property owner in as good a position as it would have been had the

injury not occurred. *In re Widening of Bagley Avenue, supra.*

Just as a property owner in a properly initiated and prosecuted condemnation action is entitled to, pursuant to statute, a reasonable attorney fee not to exceed one-third of the difference between the condemnor's offer and the ultimate award, a property owner forced to pursue an inverse condemnation action should be entitled to the same attorney fees as part of its "just compensation" pursuant to our state constitution. In the latter case, the condemnor's offer should be deemed to be zero dollars, particularly in a case such as this where the condemnor denied there was even a taking until the eve of trial. In such cases, no "good faith offer" has been made by the government as required by § 15 of the UCPA, MCL 213.55; MSA 8.265(15). Since there was no good faith offer before the institution of the lawsuit, the property owner is entitled to an award of attorney fees not to exceed one-third of the difference between the ultimate award and zero. On remand, plaintiff shall be entitled to attorney fees consistent with this opinion.

We must now address defendant's cross appeal. Defendant first claims the lower court erred in denying it attorney fees pursuant to MCR 2.405. The trial court relied on MCR 2.405(D)(3), which provides that "the court may, in the interest of justice, refuse to award an attorney fee under this rule." In invoking this subrule, the lower court noted in particular not only defendant's failure to comply with the UCPA but also its denial that there was even a taking until a few days before trial. We agree with the trial court that defendant's rather blatant refusal to comply with the legislative mandates of the UCPA justified invocation of subrule 2.405(D)(3), and we find no abuse of

discretion in the court's denial of defendant's motion for attorney fees.

We further find no merit to defendant's second argument, that evidence of plaintiff's valuation calculations based on projected rental from the proposed Builders Square development is too speculative and remote to be admissible. A property owner is permitted to present evidence regarding the most profitable and advantageous use it can make of its land, commonly referred to as the "highest and best use," *St Clair Shores v Conley*, 350 Mich 458, 462; 86 NW2d 271 (1957), provided that "the specific plans have moved from the realm of the speculative and the hypothetical and have attained some degree of concrete physical realization." 4 Nichols on Eminent Domain, § 12B.08[2], p 12B-54. We believe the following excerpt from Nichols, § 12B.12, pp 12B-90—12B-105, is particularly instructive here:

> In determining the market value of a piece of real property for the purposes of a taking by eminent domain, it is not merely the value of the property as it is used by the owner that should be taken into consideration. The possibility of its use for all purposes, present and prospective, for which it is adapted and to which it might in reason be applied, must be considered. . . . Although a use reasonably likely to take place in the future can be considered the highest and best use, such future use becomes too speculative for consideration if the "future" that is contemplated is beyond the "near future." To warrant admission of testimony as to the value for purposes other than that to which the land is being put, . . . the landowner must first show: (1) that the property is adaptable to the other use, (2) that it is reasonably probable that it will be put to the other use within the

immediate future, or within a reasonable time, and (3) that the market value of the land has been enhanced by the other use for which it is adaptable.

A review of the record in the case at bar reveals that plaintiff's negotiations with Builders Square, while not finalized, had progressed to a point where the proposed development was well beyond the realm of speculation. Whether plaintiff would, in fact, have been able to procure the number and type of other tenants it claimed it could was the subject of some dispute, as were some of the other factors comprising plaintiff's valuation calculations. However, the plans were not so remote or speculative as to render them inadmissible. Any dispute regarding the feasibility or profitability of the proposed project was, and will be, the subject of cross-examination and, no doubt, conflicting expert testimony. Plaintiff should not be precluded, where there is adequate foundation, from presenting what it deems to be the best and highest use of its property.

What plaintiff is not entitled to, however, is the value of its lost business deal. As we stated at the outset of this opinion, where part of a parcel is taken, just compensation is to be determined by the amount which the value of the parcel from which it is taken is diminished, in addition to direct compensation for the part actually taken. *In re Widening of Michigan Avenue, supra.* This is a principle by which this matter should be resolved, but one of which, we believe, the parties have lost sight.

Reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion.