# STATE OF MICHIGAN

# COURT OF APPEALS

MICHIGAN DEPARTMENT OF
TRANSPORTATION,

UNPUBLISHED
September 22, 2015

Plaintiff-Appellant,

v

No. 319356
Wayne Circuit Court
LC No. 11-008789-CC

PANACEA REDEVELOPMENT CORP., ELIXIR
PROPERTIES, INC., TITAN DEVELOPMENTS,
LLC, TITAN DEVELOPMENT, LLC, and
COMERICA BANK,

Defendants-Appellees,

and

HORVATH TOWERS, LLC, and OAKLAND
COUNTY TREASURER,

Defendants.

Before: BECKERING, P.J., and CAVANAGH and SAAD, JJ.

SAAD, J. (*concurring*).

I concur with the outcome and analysis in Parts II-B and II-C in the majority opinion. In Part II-A, I agree that plaintiff's expert was improperly excluded, but because I have slightly different reasons, I am writing separately.

## I. ELLIS'S OPINION

Plaintiff's expert, Michael Ellis, made a report regarding his opinion on the amount that defendants were to be compensated. In his report, he used two evaluations—the value of the property before the taking and the value of the property after the taking—with the amount due to defendants being the difference. This is a recognized method to evaluate just compensation in a partial taking, *Dep't of Transp v Sherburn*, 196 Mich App 301, 305; 492 NW2d 517 (1992), as happened here. Ellis determined that the value of the property before the taking was $665,000 and that the value after the taking was $475,000, resulting in a difference of $190,000, which was to be owed to defendants as compensation.

-1-

Ellis noted that "[i]n recent years, there has been no demand to acquire land for new industrial development in the vicinity of the appraised property." He concluded that the property's highest and best use, both before and after the taking, was "as a speculative land holding for potential future open yard storage purposes."

In his deposition, Ellis was questioned extensively about what he meant by the word "speculative." Ellis was asked what that term meant, but in his answer, he focused more on the demand of the land:

> What that means is based on my investigation and research, which includes discussions with brokers . . . , there's little to no demand for industrial land, including pieces similar to the subject. They're marketed for years. They remain on the market without receiving offers. So someone acquiring it, unless they're going to use—try to come up with something or they have a need for it, they'd be acquiring it speculatively, hoping that they could find something they could use it for. There's not a lot of demand.

Later, he arguably gave a better answer to the question of what he meant by "speculative," where he stated that his valuation as of the date of the taking reflected its use as a "speculative land holding *for some type of use, non-fully defined other than open yard storage*." (Emphasis added.) Thus, even though the testimony is somewhat confusing, it appears that Ellis used "speculative" to mean that he was not certain what type of open yard storage ultimately would be used. Yet, he was certain that open yard storage was the highest and best use. In fact, Ellis reinforced this opinion later when he noted that another broker told him that in his opinion, "it could take years to find a prospective buyer" and that "[o]pen storage" would be the most likely use of the property.

## II. TRIAL COURT'S RULING AND RATIONALE

The trial court granted defendants' motion to preclude plaintiff's expert, Ellis, from testifying because it deemed that Ellis "fail[ed] to establish a proper highest and best use for the property." The court explained:

> Plaintiff's appraiser has determined that there is no highest and best use of the property as his purported highest and best use is speculative and fails to establish a market demand for highest and best use as required by Michigan Civil Jury Instruction 90.09.
>
> In fact Plaintiff's appraiser concludes that there is no demand for his proposed highest and best use in direct contravention to the civil jury instruction.

The court also found that Ellis's appraisal should be excluded because it did not determine the market value as of the date of the taking but instead offered "a market value for some future speculative date."

## III. STANDARDS OF REVIEW

This Court reviews a trial court's decision whether to admit expert witness testimony for an abuse of discretion. *Lenawee Co v Wagley*, 301 Mich App 134, 161; 836 NW2d 193 (2013). A court abuses its discretion when it chooses a result that falls outside the range of reasonable and principled outcomes. *Id.* at 162. But "preliminary issues of law underlying an evidentiary ruling are reviewed de novo." *Mich Dep't of Transp v Haggerty Corridor Partners Ltd P'ship*, 473 Mich 124, 134; 700 NW2d 380 (2005). Further, any factual findings of the trial court are reviewed for clear error. *Schumacher v Dep't of Nat'l Resources*, 275 Mich App 121, 127; 737 NW2d 782 (2007). A finding is clearly erroneous if the Court is left with a definite and firm conviction that a mistake has been made. *Nat'l Wildlife Federation v Dep't of Environmental Quality (No 1)*, 306 Mich App 336, 342; 856 NW2d 252 (2014).

## IV. ANALYSIS

### A. APPLICABLE LAW

The constitution prohibits the taking of private property for public use, without the payment of just compensation. Const 1963, art 10, § 2. "In the condemnation setting, 'just compensation' is defined as the amount of money that will put the person whose property has been taken in as good a position as the person would have been in had the taking not occurred." *Detroit/Wayne Co Stadium Auth v Drinkwater, Taylor, & Merrill, Inc*, 267 Mich App 625, 632; 705 NW2d 549 (2005). This determination is based on the fair market value of the property, and it is to be determined as of the date of the taking. *Id.* "The determination of value is not a matter of formulas or artificial rules, but of sound judgment and discretion, based upon a consideration of all the relevant facts in a particular case." *In re Widening of Mich Ave from 14th Ave to Vinewood Ave*, 299 Mich 544, 549; 300 NW2d 877 (1941) (quotation marks omitted). Although the concept of "value" is used, it is important to note that the goal is "compensation" to the landowner. Thus, where only a portion of land is taken by condemnation, just compensation is not merely measured by the amount of acreage that was taken, but instead also includes any consequential losses to the remaining property. *Dep't of Transp v VanElslander*, 460 Mich 127, 130; 594 NW2d 841 (1999); *In re Petition of Mackie*, 5 Mich App 572, 576; 147 NW2d 441 (1967).

It is well established that a condemnee generally is entitled to compensation based on the "highest and best use" of the property. *Haggerty Corridor Partners*, 473 Mich at 127 n 3. The highest and best use of property is a concept fundamental to a determination of true cash value because it recognizes that "the use to which a prospective buyer would put the property will influence the price that the buyer would be willing to pay for it." *Great Lakes Div of Nat'l Steel Corp v City of Ecorse*, 227 Mich App 379, 408; 576 NW2d 667 (1998). The highest and best use is "the most profitable and advantageous use the owner may make of the property even if the property is presently used for a different purpose or is vacant, so long as there is a market demand for such use." *Detroit/Wayne Co Stadium Auth*, 267 Mich App at 633 (quotation marks omitted). In other words, a highest and best use must be "legally permissible, financially feasible, maximally productive, and physically possible." *Detroit Lions, Inc v City of Dearborn*, 302 Mich App 676, 697; 840 NW2d 168 (2013) (quotation marks omitted).

### B. HIGHEST AND BEST USE

In my judgment, the trial court erred when it found that Ellis failed to provide a legitimate highest and best use in his evaluation because "his purported highest and best use is speculative and fails to establish a market demand" for that use. While Ellis used the term "speculative" in the context of "speculative land holding," it is clear from context that he was describing that the highest and best use was "*non-fully defined other than open yard storage.*" (Emphasis added.) Thus, the "speculative" nature of the use was the specific types of things that a prospective buyer would eventually store on the property; but Ellis always determined that the highest and best use was for "open yard storage." While assumptions regarding a property's highest and best use that are "too speculative" are impermissible, see *Detroit/Wayne Co Stadium Auth*, 267 Mich App at 643, the type of speculation here regarding what *types* of items would be stored on the lot is not germane to the property's evaluation as an open yard storage lot. In other words, whether used for the storage of trucking, construction, railway, or anything else has no material effect on the fact that the property will continue to be used as open yard storage. Accordingly, the trial court erred in relying on this "speculation" in granting plaintiff's motion to exclude Ellis.

## C. EVALUATION AT FUTURE DATE

The trial court also clearly erred when it determined that Ellis provided a value for the property at some future speculative date. Ellis repeatedly stated in his report and at his deposition that he was evaluating the property as of the date of the taking, July 22, 2011. Merely because he did not know (and could not reasonably know) when a potential buyer would have purchased the property had it been put on the market, does not transform his July 22, 2011, evaluation into one for a different date.

## D. NO DEMAND

The trial court also erroneously found that Ellis impermissibly selected a highest and best use that had no demand. The trial court erred by assigning fault to the expert, when, in fact, his opinion was predicated on the reality of the real estate market. As already noted, the highest and best use is "the most profitable and advantageous use the owner may make of the property even if the property is presently used for a different purpose or is vacant, *so long as there is a market demand for such use.*" *Detroit/Wayne Co Stadium Auth*, 267 Mich App at 633 (quotation marks omitted; emphasis added). In applying this aspect of the law, defendants argued that Ellis's statements that there was "no demand" for the property precluded him from testifying. The trial court agreed.

Ellis repeatedly stated that there was "no demand" for the property in question. At times, though, he qualified his position to explain that there was "not a lot of demand" and "little to no demand." In any event, defendants and the trial court are trying to extend the law in *Detroit/Wayne Co Stadium Auth*, 267 Mich App at 633, beyond circumstances that it was meant to cover. The restriction that there be market demand for a highest and best use is only applicable when the proffered highest and best use is *different* from the then-existing use. As *Jack Loeks Theatres, Inc v City of Kentwood*, 189 Mich App 603, 618-619; 474 NW2d 140 (1991) vacated in part on other grounds 439 Mich 968 (1992), explained:

"In determining the market value of a piece of real property for the purposes of a taking by eminent domain, it is not merely the value of the property as it is used by the owner that should be taken into consideration. The possibility of its use for all purposes, present and prospective, for which it is adapted and to which it might in reason be applied, must be considered. . . . Although a use reasonably likely to take place in the future can be considered the highest and best use, such future use becomes too speculative for consideration if the 'future' that is contemplated is beyond the 'near future.' To warrant admission of testimony as to the value *for purposes other than that to which the land is being put*, . . . the landowner must first show: (1) that the property is adaptable to the other use, (2) that it is reasonably probable that it will be put to the other use within the immediate future, or within a reasonable time, and (3) that the market value of the land has been enhanced by the other use for which it is adaptable." [*Id.*, quoting 4 Nichols, Eminent Domain, § 12B.12, pp 12B-90-12B-105 (emphasis added).]

Here, Ellis opined that the property's highest and best use after the taking was the same as the property's highest and best use before the taking. And more importantly, the property's current use before the taking was consistent with what Ellis described as a "speculative land holding for potential future open yard storage purposes." It was undisputed that the property was vacant at the time of the taking. But in years prior, the land had been used as open yard storage. Ellis's description of what he meant by "speculative land holding" is indistinguishable with how the land was actually being used before (and after) the taking. The land was vacant and ostensibly was awaiting another tenant to use as some type of open yard storage after its prior tenant left. In fact, Ellis's proposed highest and best use is similar to the use that was proffered by defendants' own expert, which was "a use related to freight storage and transportation." As a result, defendants' and the trial court's focus on whether there was any demand for the property and whether Ellis's purported use was too speculative are red herrings and miss the mark. Because Ellis's proposed use was consistent with the property's actual use, no further analysis is needed. As *Jack Loeks Theatres* makes clear, these other considerations are pertinent only if the proffered value is "for purposes other than that to which the land is being put." *Jack Loeks Theatres*, 189 Mich App at 618.

Furthermore, if defendants' view were correct, then an expert could never opine on the value of property if the expert concluded, reasonably, that there was little or no demand for that property. This is an untenable proposition because relevant information and opinion would be withheld from the factfinder. The restriction in *Detroit/Wayne Co Stadium Auth* and *Jack Loeks Theatres* is meant to prevent an expert from opining that a piece of property has an inflated value due to some *fanciful* highest and best use. It is not meant to preclude expert testimony if there is no demand for the land itself. Instead, experts must be allowed to offer their opinion and may even estimate the property's value when there is no market for the property:

While the market value of property is the appropriate measure of value for property of a kind which changes hands regularly, where the property has no market value, resort must be had to other data to ascertain its value. *Any* just and equitable market method of valuation can be used when there is no relevant market. For example, when the general rule of market value cannot be used because it is impracticable in the sense that there is no market for the property or

interest at issue or in the sense that market value is too difficult to find, value may be estimated. [26 Am Jur 2d, Eminent Domain, § 279, pp 663-664 (emphasis added).]

Accordingly, for these reasons, I conclude that the trial court abused its discretion in precluding Ellis from testifying.


/s/ Henry William Saad