*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KENNETH RUDISEL, LINDA RUDISEL, JOHN P. WRIGHT, GREGORY SBROGLIA, THERESA SBROGLIA, KEMP FAMILY TRUST, STEPHEN SZYNAL, JOAN SZYNAL, PINNACLE STORAGE, LLC, and DEBORAH I. GRABER,

        Plaintiffs-Appellees,

v

TORCHPORT AIRPARK, LLC,

        Defendant,

and

VENTURE NORTH, INC.,

        Defendant-Appellant.

UNPUBLISHED
July 25, 2024

No. 364703
Antrim Circuit Court
LC No. 2020-009244-CH

Before: JANSEN, P.J., and REDFORD and D. H. SAWYER*, JJ.

PER CURIAM.

This matter involves claims of self-dealing in the administration of the Torchport Airpark Condominium development ("the project" or "the development"), a condominium development created under the Michigan Condominium Act, MCL 559.101 *et seq*. Plaintiffs own condominium units within the development. Defendant Venture North, Inc. ("VNI"), is the original developer of the project. Defendant Torchport Airpark, LLC ("TAL")[1] is the current and successor developer. According to plaintiffs, VNI used its status as owner of a majority of the condominium units to amend the project's master deed to incorporate into the project two grass runways serving

---

[1] The trial court granted summary disposition in favor of TAL, and dismissed TAL from the suit. TAL is not a party to this appeal.

*Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

-1-

the development as a common element of the project while at the same time removing from the project a vacant 80.52-acre parcel held as a common element. Plaintiffs represent that these amendments were made at the request of TAL as a condition precedent to its purchase of the development from VNI. VNI appeals by right the trial court's errata order granting summary disposition in favor of plaintiffs under MCR 2.116(I)(2) on their conversion claim. VNI challenges this grant of summary disposition, as well as a grant of summary disposition in favor of plaintiffs on the issue of liability on their claim alleged in Count I, subpart D of their amended complaint. VNI also challenges the trial court's rulings that allowed plaintiffs to rely on the property tax assessment records and the testimony of a township assessor to establish the valuation of the vacant parcel. We reverse and remand for further proceedings.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

VNI established the Torchport Airpark as a site condominium in February of 1999. The original development consisted of 8.39 acres situated along two grass landing strips. The original master deed for the development, which was recorded in 1999, describes the development as a multiphase project initially consisting of 15 condominium units with an option to expand the development to include no more than 83 units. Both the original master deed and the original bylaws of the condominium association describe the project as "a 'fly in' community for the use and enjoyment of aircraft owners."[2] VNI owned the grass landing strips. These runways were not part of the original development.

Pertinent to this appeal, in January of 2002, the master deed was amended to reflect that VNI had exercised its right to expand the size of the development by adding 129.7 acres to the original 8.39-acre parcel. VNI then created an additional 31 condominium units. VNI labeled the remaining 80.52-acre vacant parcel "NEED NOT BE BUILT CONVERTIBLE AND CONTRACTUAL AREA." VNI did not reserve a right of conversion or a right of contraction associated with this vacant land in the master deed. By operation of the terms of the master deed, the developer's right to expand the project expired on the "date six (6) years after the initial recording" of the master deed. VNI also did not withdraw the need-not-be-built parcel from the project as authorized by § 67 of the Condominium Act, MCL 559.167. As a consequence, by operation of § 67, this vacant parcel became a general common element within the project.

As of the beginning of 2020, VNI retained ownership of 30 of the 46 condominium units because of an inability to find buyers for the units.

On May 13, 2020, Maryanne Jorgensen, the President of the Torchport Airpark Condominium Association, and a principal in VNI, called a special meeting of the association for May 29, 2020 under Article XI(B) of the master deed. According to the written notice sent by Jorgensen, the purpose of the meeting was to vote on a proposed fifth amendment to the master deed, which would "amend the legal description of the condominium and clarify the general common elements." The proposed amended legal description of the project, if adopted, would incorporate the two grass runways into the development. Additionally, the proposed amendment

---

[2] The aviation use restriction was removed by a September 14, 2015 amendment to the bylaws of the condominium association.

to Exhibit B of the master deed, if adopted, would identify the runways as general common elements of the project. Finally, the proposed amendment, if adopted, would excise the 80.52-acre need-not-be-built parcel from the development.

The special meeting of the Association took place on May 29, 2020. The proposed amendments passed with the support of VNI and plaintiffs Kenneth Rudisel, Gregory Sbroglia, Theresa Sbroglia, Stephen Szynal, Joan Szynal, William Kemp and Vicki Kemp on behalf of the Kemp Family Trust, and Pinnacle Storage, LLC. Association president Jorgensen executed the Fifth Amendment to the master deed in her capacity as President of the Torchport Airpark Condominium Association on June 1, 2020.

On July 7, 2020, VNI conveyed by warranty deed all its units to TAL and TAL became the successor developer by operation of § 135 of the Condominium Act, MCL 559.235. TAL then advised plaintiffs of its intent to pave both runways at an approximate cost of $1.5 million, which was to be apportioned among the unit owners as authorized by the master deed, as recently amended.

Plaintiffs sued. In their three-count amended complaint, plaintiffs alleged defendants had acted in a manner that violated five provisions of the Condominium Act (Count I); defendant VNI converted plaintiffs' property interest in the vacant parcel (Count II); and defendant TAL should be estopped from amending the condominium association's bylaws to ban certain authorized uses that existed before TAL became the successor developer (Count III).

VNI sought partial summary disposition under MCR 2.116(C)(8) on Count I, subparts A, B, and E, and Count II. VNI expressly advised the trial court that it was "not seeking summary dismissal of Count I section D of Plaintiffs' Amended Complaint at this time[.]" The trial court granted the motion in VNI's favor on subparts A, B, and E of Count I, but denied the motion as to Count II. Sua sponte, the trial court denied summary disposition in VNI's favor on subpart D of Count I, explaining:

> Plaintiffs also assert that VNI violated the [Condominium] Act by failing to treat [the Vacant Parcel] as a common element of the Project. . . .
>
> * * *
>
> Given that VNI failed to withdraw the Vacant Parcel from the Project on or before June 26, 2008, the Vacant Parcel converted to a common element of the Project. Due to the fact that the Vacant Parcel converted to a common element, VNI could not unilaterally make the decision to sell the real property. Whether or not to sell the Vacant Parcel should have been decided by the Association.[36] Moreover, pursuant to the condominium documents and the provisions of the [Condominium] Act, each co-owner in the Project held a proportionate interest in the Vacant Parcel equal to the percentage of value assigned to their respective unit/s. Thus, the co-owners are entitled to sales proceeds equal to their proportional interest in the sale price for the real property and VNI's request for summary disposition on the conversion claim is denied.

[36] The Court recognizes that given that VNI maintained a majority vote due to the number of units owned, it is likely that the Association would have ultimately voted in favor of selling the Vacant Parcel.

---

In October 2021, and in light of plaintiffs' failure to obtain expert valuations of the vacant parcel, plaintiffs moved in limine for an order authorizing the admission of property tax records at trial to prove the value of the vacant parcel. Following a hearing on the motion, the trial court opined from the bench:

> I've reviewed the [*Jack*] *Loeks* [*Theatres, Inc v City of Kentwood*, 189 Mich App 603; 474 NW2d 140 (1991), vacated in part on other grounds 439 Mich 968 (1992)] case. I do find that it is a restrictive case to matters involving condemnation. At page 611, it indicates that Michigan—pardon me, "Michigan has adopted the minority view on the issue of introduction of evidence concerning assessed value. Restricting the introduction of such evidence to the property owner in a condemnation case, on the ground that introduction by the property owner amounts to an admission against interest." Again, based on that language—and I modified it slightly, based on that language, it does appear to me that *Loeks* is limited by its terms to condemnation cases, and I don't find it applicable in the matter at bar.
>
> I do think that evidence relating to assessments is relevant, and is able to be presented with regard to the resolution called for by the Court with regard to proportionality. Just a moment. The plaintiff[s have] also indicated that [they] should have the ability to pursue testimony from nonexperts with regard to valuation. There is certainly value in having experts come in and testify with regard to marketplace and valuation of specific issues that they've been retained to present on, and the Court would do an appropriate analysis with regard to the introduction of their opinions, should we get to that point.
>
> But there are no experts that have been identified by the plaintiff[s]. The plaintiff[s] seek[] to potentially use lay witnesses in order to evaluate the value of the property. The Court does find that the opinions of lay witnesses are of some value and admissible, depending upon, again, whether a proper foundation has been laid, for purposes of establishing value. Certainly those—those opinions may well be challenged on cross-examination, and we would have to look at that when we get to them, of course, but they're not excluded as an in limine matter from—from being presented to the Court, or being presented to a jury.

Consequently, the trial court granted plaintiffs permission to present lay witness testimony, which included the testimony of Amy Jenema, the tax assessor for Torch Lake Township, and evidence of the assessed value of the vacant parcel to establish the value of the parcel.

Two days before the scheduled trial date, plaintiffs and VNI presented the trial court with a set of stipulated facts along with a request for entry of a judgment on the stipulated facts and stipulated exhibits in lieu of trial. The relevant stipulated facts are as follows:

1. This Court previously ruled, over the objection of Venture North, Inc., that tax assessor Amy Jenema may testify regarding her opinion of the value of a certain parcel of real estate that is the subject of this dispute.

2. The parties and the Court acknowledge that the objection of Venture North, Inc. has been overruled and that in entering into this Stipulation Venture North, Inc. is not waiving any rights it may have to contest the Court's rulings on appeal.

3. The parties stipulate and agree that if Amy Jenema is allowed to testify regarding her opinion of the value of real estate in this matter, she would testify as follows: a) based on her review of sales in the area, she would place the true cash value of the vacant 85 acres at $4,000 per acre in 2020 when it was sold; b) "true cash value" represents the market value; and c) the SEV is half of "true cash value" of the subject property.

4. As a result of the Court's prior rulings, the sole factual issue to be addressed in the trial currently set for Thursday, June 2, 2022 is the value of the subject property, and amount of the sales proceeds that should have been distributed to each plaintiff.

5. The parties do not stipulate that the testimony outlined in paragraph 3 above is admissible (preserving that issue for appeal), but they do stipulate that Ms. Jenema's testimony, if allowed by the Court, is as set forth in paragraph 3 above.

* * *

6. The parties therefore ask the Court to accept this additional stipulation, cancel the trial currently set for June 2, 2022, review the post-trial briefing that is due to the court on or before June 10, 2022, schedule a hearing if the court desires (with remote attendance optional for counsel) for closing arguments, and to then rule on the stipulated facts in lieu of a trial as allowed by MCR 2.116(A)(2).[3] [Footnote added.]

On October 17, 2022, the trial court entered a decision and order directing VNI to pay each plaintiff $7,645.00 per unit owned, explaining:

First, the Court affirms its initial ruling that Fifth Amendment to the Master Deed is valid and enforceable. Second, the Court acknowledges that "VNI *should*

---

[3] MCR 2.116(A)(2) states: "If the parties have stipulated to facts sufficient to enable the court to render judgment in the action, the court shall do so."

not have unilaterally made the decision to the sell the real property" would have been a more accurate statement for the prior Decision and Order. Regardless, the Court's finding that "VNI could not" unilaterally make the decision to sell the real property did not automatically nullify the sale or set aside the warranty deed transferring the Vacant Parcel to TAL, as suggested by the Defendant. As such, the transfer of the property from VNI to TAL remains a valid recording and due to this transfer, Plaintiffs are entitled to their proportional interest in the sale price.

Furthermore, since the Court issued its prior Decision and Order, the parties have stipulated that the Fifth Amendment to the Master Deed both: (1) revised the legal description to include the runways as common elements and (2) removed the Vacant Parcel from the Project. However, Defendant now claims that these stipulations are evidence of a quid pro quo agreement between the Plaintiffs and VNI wherein the runways were transferred to the Association in exchange for removal and sale of the Vacant Parcel.

Nowhere in the language of the Fifth Amendment, or the ballot proposal to approve said Amendment, does it indicate or suggest that transferring the runways to the Association was done in exchange for removal of the Vacant Parcel or that Plaintiffs were somehow waiving their rights to reimbursement for sale of the Parcel. There is no evidence in the record that the re-categorization of the runways as a common element was in any way dependent upon the removal of the Vacant Parcel. The Court is not persuaded that the Plaintiffs intended to waive their rights to sales proceeds equal to their proportional interest in the sale price for the real property in exchange for addition of the runways as a common element.

*   *   *

In their Amended Complaint, Plaintiffs requested that the Court "enter a Judgment declaring Defendant's sale of the Parcel null and void or, in the alterative, award damages to Plaintiffs equal to Plaintiffs' proportional interest in the sale price, along with other relief, including equitable and injunctive relief, as determined by this Court and costs as provided by law and statute." Since the sale of the Parcel has now been affirmed by the parties, Plaintiffs are entitled to sales proceeds equal to their proportional interest in the sale price for the real property.

Amy Jenema is the Torch Lake Township Assessor. The Court takes judicial notice of the fact that a Township Assessor is generally responsible for making a determination of value on each tax parcel in their unit. As a lay witness familiar with determining the value of real property, the Court finds that Jenema is capable of testifying as to her opinions and inferences regarding the valuation of the Vacant Parcel.

The parties stipulated that Jenema reviewed sales in the Torch Lake area around the time the Vacant Parcel was sold. According to Jenema, in 2020 the real property would have been $4,000 per acre true cash value, which also represents market value. Based on this valuation, the 80.52 acre property would have been

worth $322,080. Dividing the market value of $322,080, by 46 units in the Project, results in a proportional interest of $7,001.74 per unit. The Court notes that this amount per unit is within $410 of what the value would be using the actual $520,000 sales price for the real property alone. Therefore, the Court finds that the value per unit should be calculated at $7,001.74.

In addition, Plaintiffs are entitled to interest from the sale date of July 7, 2020, through the date of this Decision and Order. Pre-complaint interest is calculated to be $118.96 per unit. Post-complaint interest, through June 2022, is calculated to be $370.31 per unit. From July 2022 through the date of this Decision and Order, the interest is calculated to be $153.99 per unit.

In conclusion, each Plaintiff is entitled to $7,645.00 per unit. [Footnotes omitted.]

VNI then moved for an order adjudicating plaintiffs' conversion claim, arguing the October 17, 2022 decision and order failed to resolve this claim. On January 6, 2023, the trial court entered an "errata" order, the text of which provides in relevant part:

Pursuant to Defendant's request, the Court finds that the first paragraph on Page 8 of the Decision and Order issued by the Court on June 15, 2021, shall be revised to read as follows:

Given that VNI failed to withdraw the Vacant Parcel from the Project on or before June 26, 2008, the Vacant Parcel converted to a common element of the Project. Due to the fact that the Vacant Parcel converted to a common element, VNI could not unilaterally make the decision to sell the real property. Whether or not to sell the Vacant Parcel should have been decided by the Association. Moreover, pursuant to the condominium documents and the provisions of the Act, each co-owner in the Project held a proportionate interest in the Vacant Parcel equal to the percentage of value assigned to their respective unit/s and the Association co-owners are entitled to sales proceeds equal to their proportional interest in the sale price for the real property. Thus, VNI'S request for summary disposition on the conversion claim is denied and Plaintiffs are entitled to summary disposition pursuant to MCR 2.116(I)(2).[4]

Furthermore, the Court revises the first sentence of the second paragraph on Page 7 to read:

Plaintiffs also assert that VNI violated the Act by failing to treat Parcel 05-14-323- 021-00 (hereinafter "Vacant Parcel") as a common element of the Project.

---

[4] MCR 2.116(I)(2) states: "If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party."

The remainder of the Decision and Order remains unchanged. [Footnotes deleted, footnote added.]

## II. STANDARDS OF REVIEW

This Court reviews de novo a grant or denial of a motion for summary disposition. *Reed v Breton*, 475 Mich 531, 537; 718 NW2d 770 (2006). Likewise, the Court reviews constitutional questions de novo. *In re AMAC*, 269 Mich App 533, 536; 711 NW2d 426 (2006). Finally, we review questions whether evidence is admissible or whether a witness may testify for an abuse of discretion. *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010); *Duray Dev, LLC v Perrin*, 288 Mich App 143, 162; 792 NW2d 749 (2010). An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes. *Edry*, 486 Mich at 639.

## III. SUMMARY DISPOSITION–COUNT I, SUBPART D

As stated, VNI sought summary disposition of the claims alleged by plaintiffs in Count I, subparts A, B, and E, and in Count II of their amended complaint. It expressly advised the trial court in its brief in support of its motion that it was not seeking summary disposition on plaintiffs' claim alleged in Count I, subpart D. Nevertheless, the trial court sua sponte denied summary disposition in VNI's favor on subpart D of Count I for the same reasons the court denied summary disposition on Count II of the amended complaint. Additionally, the trial court's ruling regarding Count I, subpart D, and Count II implicitly granted summary disposition in favor of plaintiffs on the issue of liability where the trial court found that "the co-owners are entitled to sales proceeds equal to their proportional interest in the sale price for the real property[.]" VNI argues that the trial court's sua sponte ruling regarding Count I, subpart D, violated its due-process rights because the trial court ruled without providing VNI an adequate opportunity to brief the issue and present its position to the court. We disagree.

After the trial court sua sponte granted summary disposition on the issue of liability, VNI moved for reconsideration. In that motion, VNI fully briefed and presented its arguments regarding why the trial court erred when it sua sponte granted summary disposition on Count I, subpart D. The trial court considered and rejected those arguments. Under these circumstances, we cannot find that the trial court's actions contravened VNI's due-process rights and, thus, "it is not inconsistent with substantial justice to allow the trial court's ruling to stand." *Boulton v Fenton Twp*, 272 Mich App 456, 467-468; 726 NW2d 773 (2006); see *Al-Maliki v LaGrant*, 286 Mich App 483, 486; 781 NW2d 853 (2009) ("[A]ny error by a trial court in granting summary disposition sua sponte without affording a party an adequate opportunity to brief an issue and present it to the court may be harmless . . . , if the party is permitted to fully brief and present argument in a motion for reconsideration.")

VNI also argues that the trial court erred when it sua sponte granted summary disposition in favor of plaintiffs on the issue of liability on Count I, subpart D, of plaintiffs' amended complaint. Plaintiffs correctly observe that MCR 2.116(I)(1) authorizes a trial court to grant summary disposition "at any time, including to a nonmoving party, if the court determines that sufficient facts exist to render judgment." *Boulton*, 272 Mich App at 462. Nevertheless, we find that summary disposition was prematurely granted. Even though VNI's motion sought summary

disposition under MCR 2.116(C)(8), the trial court made factual findings without the documentation necessary to do so being appending to VNI's motion and plaintiffs' answer. Moreover, MCL 559.190(2) expressly provides that "the master deed, bylaws, and condominium subdivision plan may be amended, even if the amendment will materially alter or change the rights of the co-owners or mortgagees, with the consent of not less than 2/3 of the votes of the co-owners and mortgagees." Here, the excision of the vacant parcel from the condominium project was accomplished and approved by the vote of a super-majority the owners of the condominium units, including most of plaintiffs. The trial court's ruling fails to address what impact, if any, this vote and MCL 559.190(2) have on the viability of plaintiffs' claim alleged in Count I, subpart D. For these reasons, we vacate the trial court's grant of summary disposition in favor of plaintiffs on that portion of their amended complaint.

## IV. SUMMARY DISPOSITION–COUNT II

We also find that the trial court prematurely granted summary disposition in favor of plaintiffs on Count II of their amended complaint, which may be viewed as alleging conversion by VNI of specific, identifiable sales proceeds held by VNI on behalf of plaintiffs. Although VNI is correct that "a claim for conversion does not lie with respect to real property," *Eadus v Hunter*, 268 Mich 233, 237; 256 NW 323 (1934), *Embrey v Weissman*, 74 Mich App 138, 143; 253 NW2d 687 (1977), a claim of conversion does lie where a defendant has an obligation to return specific, identified money entrusted to the defendant's care, *Garras v Bekiares*, 315 Mich 141, 148; 23 NW2d 239 (1946); *Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 111; 593 NW2d 595 (1999). Here, plaintiffs seek to recover their respective proportional interest in the sale proceeds received by VNI as a result of its sale of the vacant parcel to TAL. The trial court granted summary disposition in favor of plaintiffs on the issue of liability employing the same rationale the court relied upon to sustain summary disposition in favor of plaintiffs on Count I, subpart D. Whether VNI held specific, identified funds entrusted to it by plaintiffs depends on what impact, if any, the owners vote and MCL 559.190(2) have on the viability of plaintiffs' claimed entitled to a portion of the sales proceedings. As already noted, the trial court has yet to address this potentially dispositive question. Thus, summary disposition on Count II was prematurely granted.

## V. VALUATION EVIDENCE

Plaintiffs did not identify any property valuation experts in their witness list. As a consequence, they moved in limine to admit at trial the property tax assessment records for the vacant parcel. The trial court granted the motion, and also allowed plaintiffs to present the testimony of Amy Jenema, the tax assessor for Torch Lake Township, to testify as a lay witness regarding the valuation of the 80.52-acre vacant parcel. VNI argues that these rulings reflect error on the part of the trial court. We agree.

The trial court found the assessment records to be admissible, in part, because the admission of such evidence in this case was not barred by *Jack Loeks Theatres, Inc v City of Kentwood*, 189 Mich App 603; 474 NW2d 140 (1991), vacated in part on other grounds 439 Mich 968 (1992)–a proposition with which we do not quibble. But, the mere fact that *Loeks* did not bar admission does not render the evidence admissible, in-and-of-itself. We note that the property assessment records constituted hearsay. See *In re Memorial Hall Site*, 316 Mich 361, 362; 25 NW2d 516 (1947) (assessment valuation records admissible as an admission against party

interest); *Jack Loeks Theatres*, 189 Mich App at 611 (assessment valuation records admissible as an admission against party interest). The trial court abused its discretion by admitted the records without first determining whether an exception to the hearsay rule attached to the records.

Likewise, the trial court abused its discretion when it allowed Jenema to testify as a lay witness. Here, plaintiffs sought her testimony because of her training, experience, and qualifications provided her with a specialized ability to value parcels of real property. Because her skills and experience are not commonly shared by the man on the street, her testimony cannot be characterized as lay testimony. See *Surman v Surman*, 277 Mich App 287, 308; 745 NW2d 802 (2007) (An expert possesses knowledge in a particular area which belongs more to an expert than to a common man.). Therefore, Jenema needed to be qualified as an expert before her testimony could be admitted.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ James Robert Redford
/s/ David H. Sawyer